METROPOLITAN MORTGAGE FUND, INC. *v.*
GEORGE BASILIKO ET UX.

[No. 185, September Term, 1979.]

*Decided November 8, 1979.*

The cause was argued before MOORE, LOWE and LISS, JJ.

*Robert A. Wallace* and *Harry E. Taylor, Jr.,* for appellant.

*Leonard C. Collins* for appellees.

LISS, J., delivered the opinion of the Court.

In November of 1972, Metropolitan Mortgage Fund, Inc.,

appellant (hereinafter, Metropolitan), made loans to a corporation, Crown Oil & Wax Company (hereinafter, Crown) in the amounts of $1,494,800.00 and $912,800.00, respectively. The loans were secured by a deed of trust and two notes in the same amounts. One of the conditions of the loans was that the notes were to be personally guaranteed by the supposed principals of Crown, George Basiliko and his wife, Sophia, appellees, and John J. Gilece, Jr. and his wife, Connie. The deed of trust was subsequently foreclosed leaving a deficiency of $189,059.22 with interest from September 27, 1974. That amount was later reduced to $120,649.51 during the trial below, and at the hearing before this Court, we were advised that the deficiency was further reduced by a credit of $40,000.00 subsequent to the trial.

Gilece, an attorney and nephew by marriage to the Basilikos, was at the time the loan was negotiated serving as president of Crown. A short time after the negotiation.of the loan he severed his relationship with Crown but returned to guide the corporation through bankruptcy. On November 14, 1974, Metropolitan filed a declaration in assumpsit in the Circuit Court for Montgomery County against the Basilikos, Gilece and his wife. Metropolitan also filed a motion for summary judgment with the declaration. Gilece and his wife filed an answer to the summary judgment motion to which was attached an affidavit in which Gilece swore that the amount of $189,059.22 with interest from September 27, 1974 was not due and owing to the plaintiff as claimed in Metropolitan's suit. Listed with the affidavit were credits claimed by Gilece of approximately $129,000.00, and also included was the contention that there were genuine issues of law and fact which required a trial of the case.

The motions judge (Shure, J.) denied appellant's motion for summary judgment on several grounds including: the determination that no notice was given as required by Maryland Rule 610 c 2; that there was no military affidavit; that the original note was not in the file and some of the signatures were illegible; that the exhibit indicating bankruptcy was not under triple seal; and that there was an affidavit in the file which indicated a dispute as to part of the

claim. Appellant filed an amended motion for summary judgment in which it attempted to cure the several defects noted by the judge in its original motion. No new affidavit in opposition to the new motion was filed either by the Gileces or Basilikos. The judge denied the amended motion noting that the "original notes are now in the file but they were not filed with your motion and were apparently misplaced; the only military affidavit in the file is too remote from the standpoint of time to be considered, there was no certification under seal concerning bankruptcy; there was in the file an affidavit in opposition listing credits in the amount of $129,000.00."

Subsequent to the denial of the motion for summary judgment, an amended plea was filed by the Basilikos in which they denied the execution of the notes. The case came on for trial on January 8, 1979. At that trial, Metropolitan introduced into evidence the deed of trust and the notes allegedly signed by the Basilikos and Gileces. Both George Basiliko and his wife, Sophia, took the stand and testified under oath that the signatures on the notes were not their signatures and denied that they had ever executed any of the exhibits offered by Metropolitan. Other witnesses were called. However, none of them testified they had seen the notes or deed of trust signed by the Basilikos. The Basilikos further testified they never had any interest in Crown and contended they had never heard of the corporation before or after the notes were executed. A number of other documents bearing the signatures of the Basilikos were introduced by Metropolitan for purposes of comparison. Metropolitan had previously submitted known handwriting samples of the Basilikos to a handwriting expert, and although the expert was present in the courtroom, he was not called to testify. The appellees proffered the testimony of a handwriting expert whom they had employed, but the trial judge ruled that testimony would not be necessary. Gilece was called as a witness by the appellant. He testified that it was his understanding that George Basiliko was the sole stockholder of Crown and that the business was operated by George and his brother Gus, who died of a heart attack a week and a half before trial.

On cross examination, Gilece admitted that he had neither seen Basiliko sign the notes nor had he obtained them directly from him. Instead, he delivered the documents to Gus Basiliko to get them signed, and thereafter Gus brought them back to him. Additionally, Gilece testified: that his understanding that George Basiliko "ran the show" and was sole stockholder was based on Gus' statement to him; that he later found out that Gus Basiliko represented himself to be George in connection with Crown; that he never saw George at the various meetings in connection with Crown; and that Gus "ran a lot of things and blamed a lot of them on George." Gilece also admitted to the Judge: that most of the discussions concerning the loan or corporation were with Gus Basiliko; that he never had any discussion with George until he found that there might be a problem with payment on the notes (at the end of 1974 and into 1975); and that when Gus signed George's name they looked similar (especially the way they both signed their identical last name).

At the conclusion of the trial, the trial judge (Cave, J.) found that Metropolitan had failed to meet its burden of proof in its claim against the Basilikos, dismissed the suit against the Basilikos, and entered a judgment against the Gileces in the amount of $120,649.51. No appeal has been filed as to the latter judgment, and Metropolitan has only appealed the action of the trial court's dismissing Metropolitan's claim against the Basilikos.

The issues raised by appellant are stated as follows:
I. Whether the court below erred when it denied the plaintiff's motion for summary judgment?
II. Whether the court erred in ruling that the denial of the genuineness of the signatures by George and Sophia Basiliko, without more evidence produced by the defendant, were sufficient to rebut the presumption given the plaintiff that the signatures were genuine?
III. Whether the court erred in giving judgment to the appellees, George and Sophia Basiliko, when it did not make a finding of fact that the signatures were invalid?

## I.

Appellant complains bitterly that the trial court erred in denying its motion for summary judgment. Summary judgment is properly granted under Rule 610 "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact, and that the moving party is entitled to a judgment as a matter of law." *Dietz v. Moore,* 277 Md. 1, 4, 351 A.2d 428 (1976). "The function of a summary judgment procedure is not to try the case or decide the issues of fact raised; it is merely to determine whether or not there is an issue of fact to be tried and if there is none, to cause judgment to be rendered accordingly." *Lynx, Inc. v. Ordnance Products, Inc.,* 273 Md. 1, 7, 327 A.2d 502 (1974).

The Court of Appeals in *Guerassio v. American Bankers Corp.,* 236 Md. 500, 204 A.2d 568 (1964) detailed how issues of fact were to be raised under the summary judgment rule when it stated:

> Appellee's pleadings and affidavits set out prima facie the elements necessary to entitle it to a summary judgment as a matter of law. Thereupon, appellants were required either to discredit appellee's averments as untrue or to specify evidence which would give rise to a triable issue of material fact. Appellants' pleadings and affidavits do not discredit appellee's averments as untrue. The only issue, therefore, is whether appellants have specified some opposing evidence which would raise a triable issue of material fact. Such evidence must be indicated to the court in the form of an affidavit or deposition in support of the answer to the motion stating a fact or facts which would negative the appellee's right to a summary judgment. Maryland Rule 610 a 3; *Molesworth v. Schmidt,* 196 Md. 15, 20, 75 A.2d 100. [236 Md. at 503.]

It is clear from the record that the appellees in their response to appellant's motion for summary judgment did not file an answer or affidavit which would negative appellant's

right to a summary judgment. However, the trial judge below concluded that the appellant had not made out a case for summary judgment because of a number of defects in the exhibits and affidavits filed in support of appellant's motion. On the basis of this determination, the trial judge directed that the case proceed to trial on the merits. It is obvious from that point appellees raised two disputed issues, *i.e.,* the genuineness of their signatures on the notes and the amount due under the deficiency procedure.

We have been referred to no case in this jurisdiction or elsewhere where an appellate court has undertaken to backtrack in proceedings tried on its merits and to render a decision on the basis of a motion for summary judgment improperly denied. The aggrieved litigant has ample protection against such an error, if it occurs, by way of judgment on the merits or by a directed verdict or the granting of a motion to dismiss.

The only case even remotely analogous to appellant's position is *Hurt v. Stillman & Dolan, Inc.,* 35 Md. App. 644, 371 A.2d 1137 (1977). There the appellees obtained a summary judgment on the basis of exhibits and affidavits in support of their claims against several former employees. The appellant filed a general statement denying any indebtedness to the appellees but failed to file any specific facts or documents to support the denial. On the basis of the law as stated by the Court of Appeals in *Wyand v. Patterson Agency, Inc.,* 266 Md. 456, 295 A.2d 773 (1972), the trial judge granted a summary judgment. Within the specified thirty-day period prior to enrollment of the judgment, the appellee filed a motion to strike the judgment and with that motion filed affidavits which on their face indicated the existence of disputed facts between the parties. The trial judge denied the motion to strike the judgment, and on appeal this Court followed the law as stated in *Brewer v. Mele,* 267 Md. 437, 298 A.2d 156 (1972) where it was said:

> In reviewing the granting of the summary judgment itself, we are concerned with whether the trial judge was legally correct. In reviewing the

denial of a motion to strike a summary judgment, on the other hand, we are concerned only with whether the trial judge abused his discretion. *Clarke Baridon v. Union Co.,* 218 Md. 480, 147 A.2d 221 (1958). These are distinct types of decision. The critical question for the trial court vis-a-vis the Leard summary judgment was whether there existed a genuine dispute as to a material fact and, if not, what the ruling of law should be upon those undisputed facts. The critical question for the trial court vis-a-vis the Mele motion [to vacate the summary judgment] was whether the appellant had shown a reasonable indication of a meritorious defense to the motion or other equitable circumstances that would justify striking the judgment — that is, whether the court entertained a reasonable doubt that justice had been done in the earlier granting of the summary judgment. [267 Md. at 441.]

We conclude that the trial judge did not err in denying appellant's motion for summary judgment.

## II. and III.

We shall consider the last two issues raised by the appellant together because the facts and law involved in their determination are inextricably intertwined.

Appellant relies on Maryland Code (1975) Commercial Law Article, Section 3-307 to sustain its contention that the trial court erred in refusing to grant it a judgment against the Basilikos. That section provides:

(1) Unless specifically denied in the pleadings each signature on an instrument is admitted. When the effectiveness of a signature is put in issue

(a) The burden of establishing it is on the party claiming under the signature; but
(b) The signature is presumed to be genuine or authorized. . . .
(2) When signatures are admitted or established,

production of the instrument entitles a holder to recover on it unless the defendant establishes a defense.

Appellees did raise the issue of the genuineness of their signatures. The official comment to Section 3-307 states that "the burden is on the party claiming under the signature, but he is aided by the presumption that it is genuine. . . ." "Presumption" is defined in the Commercial Law Article, Section 1-201 (31) as meaning "that the trier of fact must find the existence of the fact presumed unless and until evidence is introduced which would support a finding of its own existence." *See Wolfe v. Madison National Bank,* 30 Md. App. 525, 352 A.2d 914 (1976).

The effect and purpose of the presumption is found in the comment to that section. The comment indicates that until some evidence is introduced that would support a finding that the signature is forged or unauthorized, the plaintiff is not required to prove that such signature is authentic. The comment states:

> The presumption rests upon the fact that in ordinary experience forged or unauthorized signatures are very uncommon, and normally any evidence is within the control of the defendant or more accessible to him. He is therefore required to make some sufficient showing of the grounds for his denial before the plaintiff is put to his proof. His evidence need not be sufficient to require a directed verdict in his favor, but it must be enough to support his denial by permitting a finding in his favor. Until he introduces such evidence the presumption requires a finding for the plaintiff. Once such evidence is introduced the burden of establishing the signature by a preponderance of the total evidence is on the plaintiff.

In a case almost exactly on point, the Rhode Island Supreme Court had before it a claim by a lender against a debtor and debtor's wife and daughter to recover on notes purportedly bearing the signatures of all three defendants.

After a jury had returned a verdict for the lender against all defendants, the trial judge granted the daughter's motion for a new trial and the lender appealed. In *Esposito v. Fascione,* 299 A.2d 165 (1973), the lender testified that he had loaned the father $12,000.00 and that one of the conditions of the loan was that he told the father that he would not make the loan unless the father, mother and daughter signed the note. The lender admitted that only the father signed the note in his presence. At trial, the mother, father and daughter denied that the daughter ever signed the note. The daughter furnished a copy of her handwriting for the trial judge to compare with the signature on the note. In affirming the action of the trial judge in granting the new trial, the Rhode Island Supreme Court said:

> The denial by all defendants that the signature on the note was that of Christine, along with her assertion that she was without knowledge of the transaction, and the sample of her signature as defendants' Exhibit B, constitute evidence sufficient to rebut the presumption that the signature was genuine or authorized. The plaintiff clearly failed to meet the burden of proof placed upon him on this issue, and the trial justice, in our opinion, was on sound ground in concluding that that burden was on plaintiff in the circumstances of this case. Again, concluding that the trial justice did not overlook or misconceive any material evidence, there was no error in his action in granting defendant Christine's motion for a new trial. [*Id.* at 168.]

To the same effect is *Wolfe v. Madison National Bank, supra,* a case which also concerned itself with the genuineness of a signature. There in a jury trial the trial judge ruled that a less than unequivocal denial of genuineness by a purported signer was sufficient to overcome the Section 3-307 presumption and to raise a factual issue for the jury to determine.

In the case *sub judice,* the denial under oath by the Basilikos that they signed the notes and the denial that they

were in any way involved in the business on whose behalf the notes were given coupled with the damaging testimony of Gilece as to the circumstances surrounding the execution of the notes, indicated that the presumption of validity was clearly overcome and a factual jury issue as to the authenticity of the signatures was raised.

We find no merit in the appellant's complaint that the trial judge erred in not making a finding of fact that the signatures were in fact invalid. The trial judge sitting as a jury said that "the court specifically does not make a finding that the signatures are not, in fact, those of the Basilikos," but elsewhere in his opinion stated, "the defendants, having overcome the presumption that the signatures are genuine, and the plaintiff having failed to meet its burden by a preponderance of the evidence, the defendants are entitled to a judgment in their favor." The situation, here, is similar to that in which an issue is submitted to a jury and the jury is unable to reach a decision as to the truth of the issue. This obviously is the traditional case in which the trier of fact has reached a state of evidential equipoise and the defendant is entitled to a verdict because the plaintiff has failed to meet his burden of proof. Under these circumstances, the verdict of the trial judge is not only not clearly erroneous but eminently correct.

*Judgment affirmed.*
*Costs to be paid by appellant.*