527 A.2d 828
**Herbert CHEW**

v.

**PAUL D. MEYER, M.D., P.A.**

**No. 1481, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

July 10, 1987.

Certiorari Denied Dec. 9, 1987.

**134**

Alvin Solomon (Barbara Solomon Brown, on the brief), Baltimore, for appellant.

E. Philip Franke, III (John F. King and Anderson, Coe and King, on the brief), Baltimore, for appellee.

Argued before BLOOM and ROBERT M. BELL, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), specially assigned.

BLOOM, Judge.

Appellant, Herbert Chew, filed in the Circuit Court for Baltimore City a multiple count complaint, sounding in tort and contract, against appellee, Paul D. Meyer, M.D., P.A. Appellee moved for dismissal of the complaint in its entirety, asserting that the claims were not properly before the court because the claims should have been filed with the Health Claims Arbitration Office, pursuant to Md.Cts. & Jud.Proc.Code Ann. § 3–2A–01 *et seq.* (1984 Repl.Vol.). Dr. Meyer also moved for summary judgment as to each count. The court granted the motion to dismiss; simultaneously (and inconsistently) it granted Dr. Meyer's motion for sum-

mary judgment as to five of the six counts of the complaint. Mr. Chew, understandably perturbed, noted a timely appeal. We agree with appellant that the court erred in granting appellee's motion to dismiss. We also agree that the court erred in granting summary judgment as to appellant's claims for breach of contract and negligence. We shall explain.

### Facts

The gist of appellant's claim is that his employer fired him, for an unexcused or unexplained absence from work, because Dr. Meyer, after undertaking to send to the employer a document that would explain and excuse Chew's absence from work, failed to do so in a timely manner. The facts underlying appellant's claim, as gleaned from the pleadings, depositions and answers to interrogatories, are as follows.

Mr. Chew was employed by Bethlehem Steel Company. The employer required all employees who missed work to produce a written explanation for the absence within fifteen days of the last day worked. A medical explanation or excuse for absence from work required a writing signed by a physician, but the employer prescribed no particular form; therefore, any memorandum or insurance form signed by a physician would suffice.

On 8 September 1983, Chew was admitted to South Baltimore General Hospital for surgery to relieve discomfort in his left thigh. Prior to entering the hospital, Chew informed his surgeon, Dr. Meyer, that a particular insurance form entitled "Statement Claim for Sickness and Accident Weekly Benefits" had to be completed and returned to his employer promptly. It was Chew's intention that that form serve not only to enable him to collect sick pay but also to document the legitimate excuse for his absence from work.

The day following his surgery, Chew presented Dr. Meyer with the insurance form and insisted that he complete it immediately. The doctor refused, but he did accept the

form for completion by his secretary. In his deposition Chew claimed that he told the doctor at that time, "make sure that you get the papers in within the next week ... or it could cost me my job...."

During the period between 10 September and 21 September Chew made several inquiries of the doctor and his secretary concerning the status of the insurance form and on at least one occasion repeated that he could lose his job if that form was not expedited. Each time he was given assurance that the form would be mailed promptly. The form was not completed, however, until 21 September 1983 and was not received by Bethlehem Steel until 26 September 1983. As a result of the failure to supply his employer with timely documentation that his absence from work was due to an excusable cause, Chew was discharged from employment.

Chew's six-count complaint against Dr. Meyer, arising out of the doctor's failure to complete and promptly return the insurance form, alleged negligence, breach of contract, intentional interference with contractual relationship, negligent infliction of emotional distress, and breach of fiduciary relationship.

In ruling on appellee's motion to dismiss, the court determined that Chew's claim was essentially one for medical malpractice; accordingly, it granted that motion. At the same time, the court also ruled on appellee's motion for summary judgment, granting that motion with respect to each count except one for breach of contract.

### I Motion to Dismiss

■ The statutory provision that delineates the jurisdiction of the Health Claims Arbitration Office reads in pertinent part:

§ 3–2A–02. Exclusiveness of Procedures.

(a) *Claims and actions to which subtitle applicable.* —(1) All claims, suits, and actions, including cross claims, third-party claims, and actions under Title 3 Subtitle 9 of this article, by a person against a health care provider for

*medical injury* allegedly suffered by the person in which damages of more than the limit of the concurrent jurisdiction of the District Court are sought are subject to and shall be governed by the provisions of this subtitle.

(2) An action or suit of that type may not be brought or pursued in any court of this State except in accordance with this subtitle.

Md.Cts. & Jud.Proc.Code Ann. § 3–2A–02 (Supp.1986) (emphasis added). The term "medical injury" is defined in § 3–2A–01(f) as an "injury arising or resulting from the rendering or failure to render health care." The critical question, therefore, is whether the injury sustained by appellant can be fairly characterized as having resulted from the rendering or failure to render health care. We do not think it can.

The Health Claim Arbitration Act was passed by the General Assembly as a partial solution to the burgeoning medical malpractice crisis of the time. *Cannon v. McKen*, 296 Md. 27, 34, 459 A.2d 196 (1983). Consequently, the Act has been deemed as applying only to those situations involving what is ordinarily denominated as medical malpractice—a health care provider's breach of his duty to exercise professional expertise or skill. *See e.g. Long v. Rothbaum*, 68 Md.App. 569, 514 A.2d 1223 (1986); *Brown v. Rabbitt*, 300 Md. 171, 476 A.2d 1167 (1984). When professional skill is involved, the claim is arbitrable irrespective of its theory of recovery—tort, contract, or strict liability. *Brown v. Rabbitt, supra*, 300 Md. at 175, 476 A.2d 1167. If, however, the thrust of the action does not concern the exercise of professional skill or expertise, the action falls outside the act and is properly brought directly to Maryland courts. *Cf. Nichols v. Wilson*, 296 Md. 154, 460 A.2d 57 (1983); *Cannon v. McKen, supra.*

Chew's claims against Dr. Meyer do not arise out of the doctor's failure to adhere to the level of skill or expertise ordinarily expected of a neurosurgeon. As Chew acknowledged in his brief and at oral argument, he is entirely satisfied with Dr. Meyer's skill as a surgeon. Chew's

complaint against Dr. Meyer lies in the doctor's failure to perform, in a proper and timely manner, a clerical task collateral to rendering "health care." We do not believe the Legislature ever intended such a claim to come within the act. *Cf. Nichols v. Wilson, supra* (claims for assault, battery and intentional infliction of emotional distress were not arbitrable even though striking of patient occurred during medical treatment).

## II *Summary Judgment*

Having determined that this case was properly before the circuit court, we now consider the court's granting of summary judgment.

### A. *Generally*

A grant of summary judgment is appropriate only where a two-fold test is met. The movant for summary judgment must clearly demonstrate the absence of any genuine issue of material fact and must also demonstrate that he is entitled to judgment as a matter of law. Md.Rule 2–501(a). *See also Dietz v. Moore,* 277 Md. 1, 4, 351 A.2d 428 (1976); *Metropolitan Mortgage Fund, Inc. v. Basiliko,* 44 Md.App. 158, 162, 407 A.2d 773 (1979); *Vanhook v. Merchants Mutual Insurance Co.,* 22 Md.App. 22, 26, 321 A.2d 540 (1974). The court, in ruling on a motion for summary judgment, must consider "the pleadings, depositions, answers to interrogatories, admissions and affidavits" submitted by the parties. Md.Rule 2–501(e).

At a hearing on a motion for summary judgment, the function of the judge is "much the same as that he performs at the close of all the evidence in a jury trial when motions for directed verdict ... require him to determine whether an issue requires resolution by a jury, or is to be decided by the court as a matter of law." *Vanhook, supra,* 22 Md.App. at 25–26, 321 A.2d 540 (quoting *Knisley v. Keller,* 11 Md.App. 269, 272–73, 273 A.2d 624 (1971)). In determining whether a factual dispute exists, all inferences are to be drawn in the light most favorable to the non-moving party. *DiGrazia v. County Executive for Montgomery*

*County,* 288 Md. 437, 445, 418 A.2d 1191 (1980); *Berkey v. Delia,* 287 Md. 302, 306, 413 A.2d 170 (1980).

### B. *Negligent Infliction of Emotional Distress, Breach of Fiduciary Duty, Interference with Contract*

■■■ With these principles in mind, we may summarily dispose of Chew's arguments concerning his count for negligent infliction of emotional distress. This state does not recognize such an independent tort. *Hamilton v. Ford Motor Credit Company,* 66 Md.App. 46, 502 A.2d 1057 (1986). With equal brevity, we affirm the court's summary judgment with respect to Chew's count for breach of fiduciary duty. There is simply no evidence to establish the existence of a fiduciary relationship between Dr. Meyer and Chew concerning the insurance form at issue. Similarly, there is no evidence to support Chew's bare allegation that Dr. Meyer intentionally interfered with Chew's employment contract with Bethlehem Steel. To the contrary, the only evidence concerning Dr. Meyer's intent was his explanation that a backlog in paper work in his office was responsible for the late preparation of Chew's insurance form.

### C. *Negligence*

We turn now to the negligence counts in appellant's complaint. The court below determined that Chew's negligence claim was governed by § 323 of the Restatement (Second) of Torts. Under § 323, one who undertakes to render services is liable for any physical harm caused by his negligence in carrying out the undertaking.[1] Since Chew

---

1. § 323. Negligent Performance of Undertaking to Render Services
   One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
       (a) his failure to exercise such care increases the risk of such harm, or
       (b) the harm is suffered because of the other's reliance upon the undertaking.

suffered only economic injury as a result of Dr. Meyer's alleged failure to complete the insurance form promptly, the court held that Chew had failed to state a cause of action for negligence.

The lower court erred by applying § 323. As illustrated by the recent case of *Jacques v. First National Bank of Maryland,* 307 Md. 527, 515 A.2d 756 (1986), the Court of Appeals has implicitly rejected that Restatement section, at least with respect to contractual undertakings.

In *Jacques,* the plaintiffs had executed a contract to purchase a $145,000 house. The contract contained a provision that the buyers would have to increase their $30,000 down payment to the extent necessary to obtain financing. The plaintiffs submitted to defendant, First National Bank, a loan application along with a $145.00 processing fee. The bank initially determined that the applicants qualified for a loan of $74,000, but later informed them that an error had been made and $41,400 was the most the bank would lend them. Caught in a bind, the plaintiffs attempted to obtain financing from another source. On the strength of the same information that was before First National, a different bank offered to loan plaintiffs $100,000. That loan was turned down by plaintiffs because market interest rates had moved drastically higher than that rate locked-in with First National Bank.

Presented with a claim for economic injury resulting from the bank's alleged negligence in the processing of plaintiffs' loan application, the Court observed that courts generally will impose tort liability for negligently inflicted economic loss when an "intimate nexus" exists between the parties. 307 Md. at 534, 515 A.2d 756. The Court then stated, "This intimate nexus is satisfied by contractual privity or its equivalent." *Id.* at 534–35, 515 A.2d 756. First National and plaintiffs were found to be in contractual privity resulting from the bank's acceptance, for a fee, of the plaintiffs'

Restatement (Second) of Torts § 323 (1977).

loan application. The Court found that the contractual relationship included an implied duty to process the loan application with reasonable care. *Id.* at 540, 515 A.2d 756. That contractual duty was deemed to give rise to a corresponding tort duty primarily because First National was fully aware that plaintiffs' contract to purchase a house left them particularly vulnerable and dependent upon the bank's exercise of due care in processing their loan application. *Id.* at 540–41, 515 A.2d 756.

The analytical approach adopted by the Court in *Jacques* is totally inconsistent with the Restatement's position. Under § 323 the nature of the relationship between the parties is irrelevant; that section applies to undertakings for consideration as well as gratuitous undertakings. The Restatement, therefore, would deny recovery for economic loss even if the parties are in contractual privity or its equivalent and even if the tort-feasor is fully cognizant of the plaintiff's dependence upon the tort-feasor to complete his undertaking with due care. In view of *Jacques*, then, § 323 is not the law of Maryland.

In the case *sub judice*, Chew has alleged that Dr. Meyer was obligated under the contract between them to complete certain insurance forms for Chew and to submit medical information concerning Chew to Chew's employer. Formerly, such a contention might well have been summarily rejected, on the basis that a physician's obligation to his patient ordinarily did not extend beyond his duty to use his best efforts to treat and cure. The traditional scope of the contractual relationship between doctor and patient, however, has expanded over the years as a result of the proliferation of health and disability insurance, sick pay and other employment benefits.

Today, the patient commonly, and necessarily, enlists the aid of his or her physician in preparing claims forms for health and disability benefits. Such forms ordinarily require information possessed solely by the treating physician as well as the physician's signature attesting to the bona

fides of that medical information. Consequently, appellant's assertion that the services Dr. Meyer contracted to perform for Mr. Chew included the completion and submission of insurance forms in addition to the surgery he performed, combined with an allegation that the doctor failed to complete and submit the document in question in a proper, *i.e.*, timely, manner states a plausible cause of action for breach of contract.

The court, therefore, correctly denied summary judgment concerning Chew's claim of breach of contract. Should the trier of fact determine that Dr. Meyer had undertaken a contractual duty to complete and submit Chew's insurance form in a timely manner, there would be no question of contractual privity, and that privity would carry with it a concomitant tort duty. Indeed, based on the language in *Jacques*, we believe that even if the doctor's initial contractual duty to provide medical and surgical treatment did not include the obligation to complete and submit the insurance form, it established a sufficiently "intimate nexus" to support a tort claim if Dr. Meyer gratuitously undertook that obligation and then performed it in such a negligent manner that economic loss to Chew resulted.[2]

According to appellant, Dr. Meyer accepted the insurance form from him with the knowledge of the consequences appellant would suffer if the form was not processed promptly. Chew repeatedly urged the doctor and his secretary to fill out that form so that he would not lose his job. In response, the doctor or his secretary repeatedly assured

2. We also note that the relationship which exists between an agent and his principal is sufficiently close to constitute an "intimate nexus" thus permitting the imposition of liability upon the agent for economic losses incurred by the principal as a result of the agent's failure to exercise reasonable care and skill in performing his responsibilities. *See Bogley v. Middleton Tavern, Inc.*, 288 Md. 645, 650, 421 A.2d 571 (1980); *Lowitt v. Pearsall Chemical Corporation*, 242 Md. 245, 253–56, 219 A.2d 67 (1966). *See also* Restatement (Second) of Agency §§ 377, 378, 379, 401 (1958), with respect to assumption of the responsibilities of an agent, either gratuitously or for hire. In this appeal, however, appellant has not advanced any theory of liability based on agency.

Chew that one of them would attend to it immediately. Dr. Meyer was fully cognizant of Chew's reliance on those assurances. Such a combination of either a contractual obligation or a gratuitous undertaking arising from the "intimate nexus" of the doctor/patient relationship, coupled with the patient's reliance, the risk of harm, and the doctor's knowledge of both the reliance and the risk is sufficient to give rise to a tort duty to act reasonably in fulfilling the obligation. *Cf. Jacques, supra.* Accordingly, appellant has stated a cause of action in negligence, which he is entitled to have submitted to a jury.

JUDGMENT REVERSED.

CASE REMANDED FOR FURTHER PROCEEDINGS.

COSTS TO BE PAID BY APPELLEE.