685 A.2d 901

**CHAMPION BILLIARDS CAFE, INC.**

v.

**Jill K. HALL.**

**No. 353, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Dec. 4, 1996.

562

Timothy Guy Smith, Woodbine, for Appellant.

Thomas J. Gagliardo (Gagliardo and Zipin, on the brief), Silver Spring, for Appellee.

Argued before CATHELL, SALMON and EYLER, JJ.

EYLER, Judge.

Although two distinct issues are raised on appeal, the primary issue presented by this case is whether an employer may be held liable in tort for economic losses, *i.e.*, medical expenses, incurred by an employee because the employer failed to forward timely the employee's application for health insurance coverage to the provider after undertaking to do so. We affirm the judgment in favor of the employee for reasons set forth below.

## Facts

Appellee, Jill K. Hall, was employed as a bartender by appellant, Champion Billiards Cafe, Inc. Appellee attended a meeting of appellant's employees in September 1994, at which time appellant offered to enroll employees in a group insurance program provided by Optimum Choice, Inc. ("Optimum Choice"), a health insurance provider. Appellant would contribute no money towards the insurance, but offered to deduct premiums from employee paychecks and forward the money to Optimum Choice.

Along with other employees, appellee completed the necessary applications and authorizations, including an authorization for payroll deductions to pay the premiums; chose one of the coverage options provided; and designated a primary physician from a list supplied by Optimum Choice. All of the completed employee applications were accepted by appellee's supervisor to be sent by facsimile to Optimum Choice. Appel-

lee believed that she had health insurance as of October 1, 1994.

Unknown to appellee, her supervisor did not send her application along with those of the other employees. There was conflicting testimony as to whether this was done accidentally or purposefully. The trial court determined that the supervisor knowingly withheld appellee's application because the supervisor believed that appellee's employment might be terminated.

Appellee was hit by a motor vehicle while riding her bicycle on October 21, 1994 and incurred medical expenses in the amount of $15,846.86. She submitted a claim to Optimum Choice, but it was denied. Through her supervisor, she learned that Optimum Choice had never received her application. The supervisor then submitted her application, but Optimum Choice refused reimbursement for expenses incurred prior to November 1, 1994, the effective date of coverage.

Appellee filed a complaint on May 4, 1992 in the Circuit Court for Montgomery County against appellant and Optimum Choice, the count against Optimum Choice being voluntarily dismissed prior to trial. Appellee sued appellant for breach of contract, negligence, negligent misrepresentation, and fraud, alleging that appellant had a duty both in contract and in tort to forward her insurance application to the provider. A bench trial was held on January 23 and 24, 1996 and, at the close of appellee's case, the trial court granted appellant's motion for judgment with respect to the fraud claim. By order filed January 31, 1996, the trial court found in favor of appellee on the negligence claim and entered judgment in appellee's favor in the amount of $15,636.36, the amount that Optimum Choice would have paid had appellee been insured.

### Issues

The issues presented to us by appellant, as rephrased by us for clarity, are as follows:

1. Did the trial court err in admitting certain documents into evidence?
2. Did the trial court err in finding the existence of a tort duty owed by appellant to appellee?

## Discussion

### A. *The Admission of Appellee's Medical Records*

Over appellant's objection, appellee introduced into evidence various medical bills and collection letters from health care providers who rendered medical treatment to appellee. Appellee did not produce expert testimony from the various providers who generated the bills, nor did appellee provide testimony from medical experts that the expenses incurred were reasonable and necessary. Appellant contends that the trial court erred in admitting into evidence the medical bills and collection letters, asserting that: (1) the documents were not authenticated; (2) they were not proved to be business records and, thus, contained hearsay; and (3) there was no expert testimony that the bills were fair and reasonable. Appellee takes the position that the documents were properly admitted because the proof necessary was not that which would be required in a personal injury action; rather, the question before the trial court was whether the bills would have been covered under the health insurance policy, if it existed. Additionally, appellee contends that the documents, if improperly admitted, constituted harmless error because there was testimony concerning the same information as was contained in the documents and that information was legally sufficient to support the judgment.

■ We do not perceive any error on the part of the trial judge. First, the documents were sufficiently authenticated. Appellee identified the bills as having been received by her and their authenticity was not disputed by Optimum Choice. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 5–901(a).

■ Second, with respect to the hearsay objection, the trial court did not state a reason for ruling in favor of admissibility, but the nature of the documents and the surrounding circumstances constituted sufficient circumstantial evidence to conclude that they were business records. Testimony from the author or all custodians of a document is not always necessary to support a finding of admissibility, as there are instances where "a court may 'conclude from the circumstances and the nature of the document involved that it was made in the regular course of business.' " *Attorney Grievance Comm'n v. Keister,* 327 Md. 56, 75, 607 A.2d 909 (1992) (*citing Pine Street Trading Corp. v. Farrell Lines, Inc.,* 278 Md. 363, 373, 364 A.2d 1103 (1976)); *Thomas v. Owens,* 28 Md. App. 442, 447, 346 A.2d 662 (1975); Md. Rule 5–803(b)(6).[1] *See* Md.Code Ann., Cts. & Jud. Proc. art., § 10–101 (1995 Repl. Vol.).

■ Third, the issue before the trial court was not the extent of damages appellee incurred due to her accident, but the extent of damages she incurred due to her lack of insurance. Witnesses testified as to the amount of the bills, that they were usual and customary for the services rendered, and that they would have been paid to the extent described below, assuming coverage. Because of the nature of the claim, appellee need only show that Optimum Choice would have paid the invoices as reasonable and customary according to its own reimbursement guidelines, if they had been submitted. All but one of the providers were participating providers in accordance with Optimum Choice's reimbursement schedule.

One of Optimum Choice's representatives calculated that Optimum Choice would have paid $12,872 to the providers; that appellee would have been responsible for $67.50; that a bill in the amount of $145 from a non-participating provider

---

1. Title 5 of the Maryland Rules became effective on July 1, 1994, but chapter 8 reflects the pre-existing common law rules regarding hearsay evidence. *Brandon v. Molesworth,* 104 Md.App. 167, 198, 655 A.2d 1292 (1995), *aff'd in part, rev'd in part on other grounds,* 341 Md. 621, 672 A.2d 608.

would not have been covered; and that the remainder of the bills would have been written off by the providers pursuant to participation agreements with Optimum Choice. The judgment entered by the trial court was in the amount of the bills, $15,846.86, less the $145 bill from the non-participating provider and the $67.50 that would have been the responsibility of appellee, producing the judgment figure of $15,636.36. Dale Adamson, Manager of Cost Containment for Optimum Choice, testified that the charges by the providers were usual and customary for the services rendered. Lee Royen, a nurse coordinator in Optimum Choice's Cost Containment Department, testified to essentially the same information. The cumulative weight of this testimony supports appellee's burden of proof concerning her economic losses.

Fourth, the above testimony was not challenged. Consequently, the admission of the documents, if assumed to be in error, was harmless.

### B. *The Existence of the Employer's Duty*

■ Appellant contends that it owed no tort duty to appellee under the facts in this case and asserts that the trial court, in finding a duty, improperly relied upon *Jacques v. First Nat'l Bank,* 307 Md. 527, 515 A.2d 756 (1986), and *Chew v. Meyer,* 72 Md.App. 132, 527 A.2d 828 (1987). More specifically, appellant seeks to distinguish this case on the basis that there was no contract, either express or implied, to forward the insurance application to the health insurer. Appellant implicitly argues that, where the undertaking was merely gratuitous, no tort duty can exist. We disagree.

In *Jacques,* the purchasers of a home sued the bank to which they had applied for a residential mortgage loan. The purchasers paid a fee for this service and the bank agreed to guarantee a certain interest rate for ninety days. The loan was denied, and the purchasers sued. The purchasers alleged that the bank was negligent in failing to evaluate properly their qualifications for a loan. Addressing whether or not such a duty existed, the Court of Appeals stated:

In determining whether a tort duty should be recognized in a particular context, two major considerations are: the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties. Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability. This intimate nexus is satisfied by contractual privity or its equivalent.

*Jacques*, 307 Md. at 534–35, 515 A.2d 756. The Court recognized in *Jacques* that a tort duty existed to process the loan application with reasonable care. There was contractual privity and the undertaking by the bank to process the loan application was an express part of the contractual obligation. Consequently, the Court of Appeals did not have before it a situation in which there was a breach of a gratuitous promise to perform.

We had occasion to apply the *Jacques* rule in *Chew, supra*, wherein a patient sued his physician, claiming that his employer fired him for an unexcused absence from work because his physician failed to send to the employer a document that would have excused his absence. The undertaking to submit forms was not part of the express contractual relationship, as in *Jacques*, but we stated that the relationship between a doctor and a patient could include an *implied* in fact contractual obligation. In holding that a cause of action was stated against the doctor for both negligence and breach of contract, we stated:

In the case *sub judice*, Chew has alleged that Dr. Meyer was obligated under the contract between them to complete certain insurance forms for Chew and to submit medical information concerning Chew to Chew's employer. Formerly, such a contention might well have been summarily rejected, on the basis that a physician's obligation to his patient ordinarily did not extend beyond his duty to use his best efforts to treat and cure. The traditional scope of the contractual relationship between doctor and patient, however, has expanded over the years as a result of the prolifera-

tion of health and disability insurance, sick pay, and other employment benefits.

Today, the patient commonly, and necessarily, enlists the aid of his or her physician in preparing claims forms for health and disability benefits.

*Chew,* 72 Md.App. at 141, 527 A.2d 828. In *Chew,* we held that the contractual obligation coupled with the patient's reliance, the risk of harm, and the doctor's knowledge of both the reliance and the risk, were sufficient to give rise to a tort duty. We observed that a gratuitous undertaking arising from the intimate nexus of the doctor-patient relationship, coupled with reliance, risk of harm, and the doctor's knowledge would also be sufficient. *See also, Weisman v. Connors,* 312 Md. 428, 540 A.2d 783 (1988); *Lubore v. RPM Associates, Inc.,* 109 Md. App. 312, 674 A.2d 547 (1996) (duty to disclose held to exist based on the nature of the relationship and the intimate nexus between the parties). *Accord Banca Del Sempione v. Provident Bank of Maryland,* 75 F.3d 951 (4th Cir.1996).

 Generally, there is no duty in tort to avoid causing economic loss. Both *Jacques* and *Chew* involved "professionals," and the law has long recognized a higher tort duty arising out of contractual dealings with professionals. That fact might explain the results in those cases, except that the basis of liability enunciated in *Jacques* and followed in *Chew* was not that "professionals" were involved, but rather it was the nature of the relationship between the parties. In *Jacques,* the relationship between the parties gave rise to the duty, primarily because the bank was aware that the purchaser was dependent upon the bank's exercise of due care in processing the loan application. Similarly, in *Chew,* the doctor knew that the patient was uniquely dependent upon the doctor to send to the patient's employer a document excusing his absence.

In this case, there was contractual privity between the appellant and appellee as a result of the employment relationship. Further, the service offered by the employer, forwarding a health insurance application, and withholding health

insurance premiums from the employee's wages, is a type of service ordinarily provided to an employee by an employer. The evidence supports the trial court's finding that appellant accepted the application form with the intention of forwarding it to the health insurance provider, knowing that appellee relied on it to do so. The trial court could infer that the employer knew that failure to forward the application would result in a lack of coverage. This is not a situation in which an employee requested help and the employer refused or a situation in which the employer knew an employee needed assistance and did nothing. The activity undertaken placed the employee in a much worse position than if the employer had not undertaken to perform; absent the employer's undertaking, the employee would have forwarded the application directly or borne the consequence of not doing so.

▮▮▮ The question of whether a tort duty will be imposed through application of the *Jacques* principles is very fact specific. There must be an intimate nexus between the parties—contractual privity or its equivalent.[2] A tort duty may arise when the particular activity undertaken was an express part of the contractual relationship, as in *Jacques,* or an implied in fact part of the contractual relationship, as in *Chew,* or, as we hold in this case, when contractual privity exists but the particular activity undertaken was gratuitous.[3] If the intimate nexus exists through contractual privity or its equivalent, whether the activity undertaken is part of a contractual obligation, express or implied in fact, or is undertaken gratuitously, the activity must be closely connected with and arise out of the nexus between the parties. In addition, to impose a tort duty, there must be reasonable reliance by the aggrieved

---

**2.** We need not decide what constitutes "its equivalent" because there was a contractual relationship between the parties. *See Weisman, supra,* and *Lubore, supra.*

**3.** An undertaking by an employer to process an employee's application for health insurance could be part of an employment contract, either express or implied in fact. In this case, there was no finding by the trial judge that the activity undertaken was pursuant to a contractual obligation and it, thus, was gratuitous.

party, a risk of loss, and knowledge by the defendant of both the reliance and the risk of loss.

In this case, the existence of the employment relationship, the fact that the undertaking was intimately connected with that relationship, the fact of reliance by the employee, the risk of loss, and the knowledge by the employer of both the reliance and the risk were sufficient to impose a tort duty on the employer.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.