**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

OMNI JET TRADING, INCORPORATED,
Plaintiff-Appellee,

v.

DAVID J. HEERENSPERGER,
Defendant-Appellant,                           No. 96-1365

and

EAGLE HARDWARE AND GARDEN,
INCORPORATED,
Defendant.

OMNI JET TRADING, INCORPORATED,
Plaintiff-Appellant,

v.

DAVID J. HEERENSPERGER,
Defendant-Appellee,                            No. 96-1426

and

EAGLE HARDWARE AND GARDEN,
INCORPORATED,
Defendant.

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CA-93-2957-WMN)

Argued: July 8, 1997

Decided: September 5, 1997

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

_____

Reversed and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Henry Mark Stichel, PIPER & MARBURY, L.L.P., Baltimore, Maryland, for Appellant. Alvin Friedman, Washington, D.C., for Appellee. **ON BRIEF:** Michael F. Brockmeyer, PIPER & MARBURY, L.L.P., Baltimore, Maryland, for Appellant. Lawrence S. Bauman, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

These consolidated cases arise from the relationship between a prospective purchaser of an aircraft and an aircraft broker. The jury awarded damages to both parties; both appeal. Finding the damage awards unsupported by the evidence, we reverse.

I.

David J. Heerensperger is the chief executive officer for Eagle Hardware and Garden, Inc., a retail chain. In the summer of 1993, Heerensperger became interested in purchasing an airplane that he could then lease to Eagle for corporate use. In July, Heerensperger asked Dennis McCormick, a pilot, to serve as his representative in searching for a plane. McCormick, in turn, contacted Omni Jet Trad-

2

ing Center, Inc., an aircraft sales company based in Easton, Maryland, for assistance. Omni had in the past often acted as a broker for other parties in purchasing and selling aircraft. McCormick spoke with Michael Sala, an Omni aircraft salesperson, about Heerensperger's request.

At trial, McCormick and Sala agreed that McCormick informed Sala that Heerensperger did not want to pay any fee over and above the purchase price of the airplane for Omni's services, but they differed as to the remainder of their conversation. According to Sala, he told McCormick that they could either establish an agency agreement, where Heerensperger would pay a fee directly to Omni, or a "back-to-back" sales relationship, where Omni would purchase the plane from the seller and then sell it to Heerensperger at a higher price, keeping the difference as its profit. Since McCormick made clear that Heerensperger did not want to pay any fee above the purchase price of the plane, Sala testified that they agreed to establish the back-to-back arrangement. McCormick denied any such arrangement, contending that he told Sala Omni's profit should come "from the seller" of the plane.

Notwithstanding the apparent lack of understanding between the two, Sala, after the discussion, dedicated significant time to searching for a plane that would meet Heerensperger's criteria. He traveled with McCormick around the country to look at planes and provided technical information to McCormick for Heerensperger's use. In the search, McCormick found one plane, a Hawker 700 model owned by ITT Automotive that fit Heerensperger's requirements. Whether McCormick first learned of the plane from Sala was contested at trial; regardless, after traveling to Pennsylvania with Sala to inspect it, McCormick sought Heerensperger's approval to make an offer.

On September 3, 1993, Heerensperger told Omni to offer $2.45 million on Heerensperger's behalf for the Hawker 700. Omni, however, offered ITT only $2.25 million -- $200,000 less than Heerensperger's offer. ITT -- through its sales agent, Gene Church -- counter-offered, telling Sala that ITT would accept $2.55 million if certain conditions were met. Sala informed McCormick that Heerensperger needed to offer $2.65 million for the plane and Heerensperger agreed to raise his offer to $2.65 million. But Omni did not offer

3

$2.65 million; instead, it bid $2.5 million for the plane -- $150,000 less than Heerensperger had authorized and $50,000 less than Church had said ITT would accept. That offer was rejected. Sala -- apparently receiving incorrect information from Church-- then informed McCormick the Hawker 700 plane had been sold.

Subsequently, McCormick learned that the plane had not been sold. After contacting Church directly, McCormick also discovered that Omni had never bid $2.65 million on Heerensperger's behalf. McCormick, with Heerensperger's authorization, rebid on the plane at $2.65 million. Because other potential buyers had expressed interest in the plane in the interim, ITT raised the price to $2.7 million. Heerensperger paid that amount, and paid no fee to Omni for the sale.

On October 14, 1993, Omni brought this diversity action against Heerensperger, asserting that Heerensperger breached a contract under which Omni was to provide aircraft search and marketing services to Heerensperger, in exchange for a reasonable fee for those services. Alternatively, Omni alleged that Heerensperger had been unjustly enriched by Omni, and should compensate Omni in quantum meruit. Omni sought a judgment in the amount of"not less than $135,000 plus interest." Heerensperger counterclaimed, asserting that Omni had agreed to be his agent in searching for a plane and had breached a fiduciary duty to him as his agent. In addition, Heerensperger alleged that Omni had defrauded him, and had committed constructive fraud and negligent misrepresentations in the course of their dealings. Heerensperger sought compensatory damages in the amount of $150,000 and punitive damages in the amount of $300,000.

After a six-day trial, the jury awarded Omni $185,500 in compensatory damages on its quantum meruit claim and awarded Heerensperger $50,000 in damages on his negligent misrepresentation claim. On a special verdict form the jury found: (1) Heerensperger did not breach any contract with Omni; and (2) Omni did not breach any fiduciary duty owed to Heerensperger or defraud Heerensperger. After the jury verdict, each party renewed motions that had earlier been made and denied requesting judgment as a matter of law; the motions were again denied.

Both parties now appeal the court's denial of their motions, each asserts entitlement to judgment, as a matter of law, or the right to a

4

new trial. We review de novo the district court's failure to grant judgment as a matter of law. Teague v. Baker, 35 F.3d 978, 985 (4th Cir. 1994). We review for abuse of discretion a denial of a motion for a new trial. Poynter ex rel. Poynter v. Ratcliff , 874 F.2d 219, 223 (4th Cir. 1989).

II.

Heerensperger's contention on appeal is that there is no evidence to support the jury's award to Omni of quantum meruit damages in the amount of $185,500.

Quantum meruit is an equitable remedy; it seeks, through restitution, to "put the plaintiff in a position as good as that occupied by him before the contract was made . . . ." W.F. Magann Corp. v. Diamond Mfg. Co., 775 F.2d 1202, 1208 (4th Cir. 1985) (quoting 5 Corbin on Contracts § 1112, at 598 (1964)). Such an award is appropriate when one party has been unjustly enriched by the actions of another. To sustain a claim based on unjust enrichment, a party must prove the following elements:

> 1. A benefit conferred upon the defendant by the plaintiff;
>
> 2. An appreciation or knowledge by the defendant of the benefit; and
>
> 3. The acceptance for retention by the defendant of the benefit under such circumstances as to make it unequitable for the defendant to retain the benefit without the payment of its value.

Everhart v. Miles, 422 A.2d 28, 31 (Md. Ct. Spec. App. 1980) (emphasis added); Mass Transit Admin. v. Granite Constr. Co., 471 A.2d 1121, 1125 (Md. Ct. Spec. App. 1984).

Thus, under Maryland law, a party may collect under quantum meruit only if he had a reasonable expectation of being paid. See Cleaves v. Sharp & Dohme, Inc., 171 A.2d 374, 377 (Md. 1934) (A plaintiff "may recover on a quantum meruit  or implied contract if his

5

efforts have been contributed under circumstances from which expectation of paying may be inferred."). The mere fact that "a person benefits another is not of itself sufficient to require the other to make restitution." Bennett Heating & Air Conditioning, Inc. v. NationsBank of Maryland, 654 A.2d 949 (Md. Ct. Spec. App. 1995), rev'd in part on other grounds, 647 A.2d 534 (Md. 1996). A seller of goods, for instance, cannot obtain reimbursement on efforts made trying to make a sale, even if those efforts benefitted another. Cleaves, 171 A.2d at 378. Moreover, in "the ordinary arrangement with commission agents and brokers," "the agent is to earn compensation only by procuring the result." Id. at 377.

When these principles are applied in this case, it is clear that there is no evidence that Heerensperger was unjustly enriched by Omni. The jury specifically rejected Omni's contention that Heerensperger had entered into a contract to purchase a plane only from Omni. Indeed, the jury rejected all claims as to the existence of a contract or agency agreement between the parties. Neither party appeals those findings; thus, we accept them as established facts.

Without a contract or agency relationship with Heerensperger, Omni could not have had a reasonable expectation of compensation from him. Rather, Omni worked on the assumption that it would be paid only if Heerensperger purchased a plane through it; Omni expected no payment if Heerensperger purchased a plane from another party or if he did not purchase any plane. Indeed, Sala, Omni's sales representative, admitted as much at trial:

> Q. Mr. McCormick never told you that he would reimburse you or Omni for the work that had been performed if they didn't buy an aircraft from you, right?
>
> A. That is correct.

Heerensperger did not "buy an aircraft from Omni," thus Omni, by its own admission, had no basis for expecting compensation for its services. Accordingly, the quantum meruit award fails as a matter of law.

III.

On cross-appeal, Omni contends that the district court erred as a matter of law in permitting Heerensperger to recover on its claim of

6

negligent misrepresentation. We note at the outset that, contrary to Heerensperger's contentions, this issue has been preserved for appellate review. Omni objected to the use of a special verdict form that allowed the jury to award Heerensperger damages for its negligent misrepresentation claim, even if the jury found no agency relationship. Such an objection sufficiently preserves the issue for appeal. See, e.g., Cleveland ex rel. Cleveland v. Piper Aircraft Corp., 890 F.2d 1540, 1556 (10th Cir. 1989) (Defendant's "objection to the form of the special verdict employed by the district court preserved for our review any errors therein which were the bases for Defendant's objection, even though such asserted errors were not made the bases of a motion for a new trial or for judgment notwithstanding the verdict."); see also A.G. Sys., Inc. v. United Decorative Plastics Corp., 55 F.3d 970, 973-74 (4th Cir. 1995) (Objections to special verdicts are necessary to preserve matter for appeal.).

Turning then to the negligent misrepresentation claim -- in order to prove such a claim under Maryland law, a plaintiff must demonstrate that:

> (1) the defendant, <u>owing a duty of care to the plaintiff</u>, negligently asserts a false statement;

> (2) the defendant intends that his statement will be acted upon by the plaintiff;

> (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;

> (4) the plaintiff, justifiably, takes action in reliance on the statement; and

> (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

Brock Bridge Ltd. Partnership v. Dev. Facilitators, Inc., 689 A.2d 622, 630 (Md. Ct. Spec. App. 1997) (quoting Martens Chevrolet, Inc. v. Seney, 439 A.2d 534 (Md. 1982)) (emphasis added); accord Village

7

of Cross Keys, Inc. v. United States Gypsum Co., 556 A.2d 1126 (Md. 1989).

The extent of duty owed a plaintiff depends on the nature of the relationship enjoyed with the defendant. See Brock Bridge, 689 A.2d at 630. Traditionally, courts permit recovery for negligent misrepresentation "in the context of a patient's or client's dealings with a professional in whom one places a great degree of personal trust and confidence -- such as a physician, an attorney, an architect or a public accountant." Martin Marietta Corp. v. International Telecomms. Satellite Org., 991 F.2d 94, 98 (4th Cir. 1992) (quoting district court opinion, 763 F. Supp. 1327, 1332-33 (D. Md. 1991)) (discussing Maryland law); see, e.g., Brock Bridge , 689 A.2d at 633 (finding that engineering contractor could be held liable for misrepresenting cost of construction project); Village of Cross Keys , 556 A.2d 1126, 1134 (suggesting that negligent misrepresentation claim can lie against a curtain wall manufacturer for misrepresentations in publication if misrepresentations were reasonably relied upon by architects and engineers).

In evaluating whether a plaintiff owed a defendant a duty of care, Maryland courts also consider the "nature of the harm likely to result from a failure to exercise due care." Champion Billiards Cafe, Inc. v. Hall, 685 A.2d 901, 905 (Md. Ct. Spec. App. 1996), cert. denied, 690 A.2d 523 (1997). "Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability." Id. (emphasis added).

Contractual privity or its equivalent satisfies this"intimate nexus" requirement. Id. Maryland courts have also occasionally found this "intimate nexus" between parties who do not enjoy contractual privity but enjoy some other special relationship. For instance, in L&P Converters, Inc. v. Alling & Cory Co., 642 A.2d 264 (Md. Ct. Spec. App. 1994), the Court of Special Appeals found sufficient"intimate nexus" between a broker of paper goods and a paper converter. Immediately prior to entering into a contract to purchase the paper, the broker specifically asked the converter if its paper met the specifications for a job the broker was bidding on; after the converter twice expressly assured the broker that it did, the broker purchased from the converter

8

a large quantity of paper that proved unsuitable. See also Weisman v. Connors, 540 A.2d 783 (Md. 1988) (finding intimate nexus between an employer and a prospective job candidate in pre-contractual negotiations).

Omni contends that no evidence supported a finding that it owed a duty of care to Heerensperger. We agree. Neither "the relationship that exist[ed] between the parties" nor "the nature of the harm likely to result" justifies the imposition of such a duty here. Champion Billiards Cafe, 685 A.2d at 905.

The relationship between Heerensperger and Omni involved no intimate nexus. The jury specifically rejected the parties' contract and agency claims, clearly indicating that it found no contractual or agency relationship to exist between them that could justify a heightened duty of care. Moreover, unlike the situation in L&P Converters, 642 A.2d 264, Omni's misrepresentations did not take place during extensive pre-contractual negotiations, in which one party can reasonably expect the other to be truthful. Furthermore, unlike those cases where a plaintiff without access to reasonable knowledge relied on representations from an expert in the field on a matter in which the client was ignorant, see, e.g., Brock Bridge, 689 A.2d at 633, Omni's misrepresentations upon which Heerensperger assertedly relied required no unique expertise. Heerensperger was perfectly capable of directly asking ITT what price was acceptable, what had been bid, and whether its plane was still available; for such purposes, Heerensperger did not need to rely on the professional expertise of Omni.

Nor are we persuaded by Heerensperger's invocation of Giant Food, Inc. v. Ice King, Inc., 536 A.2d 1182 (Md. Ct. Spec. App. 1988). There, a supplier of ice and a potential buyer held discussions over the course of seven months about establishing a long-term relationship. In reliance on Giant's representations, Ice King invested in an ice making plant; when Giant subsequently informed Ice King it had no need for its ice, Ice King brought suit. The court found that "[t]hough, initially, the relationship was arguably tenuous, it ripened into a full-fledged business dealing as communications continued." Id. at 1185. The court concluded that that business relationship gave rise to a duty of care on the part of Giant not to misrepresent its needs in such a fashion that Ice King would invest significant sums to pre-

9

pare for future orders that Giant knew or should have known would not materialize. The case at hand, however, involves no such relationship, and no such harm. Heerensperger and Omni were not buyer and seller discussing a long-term relationship. Rather, Omni served as a one-time potential broker to Heerensperger; its relationship to Heerensperger was not even exclusive. Unlike Ice King, Heerensperger made no major new investments based on the asserted misrepresentations.

In sum, just as Heerensperger assumed no duty to pay Omni if he did not purchase a plane through Omni's services, Omni assumed no duty to guard against negligent misrepresentations. To hold otherwise would do serious harm to the concept of intimate nexus. Accordingly, Heerensperger's negligent misrepresentation claim must fail as a matter of law.

IV.

For the reasons set forth above, the judgments of the district court are reversed and the cases are remanded to the district court for entry of judgment in No. 96-1365 on Omni's quantum meruit claim in favor of Heerensperger, and in No. 96-1426 on Heerensperger's negligent misrepresentation claim in favor of Omni.

REVERSED AND REMANDED

10