**Michael N. SHERIDAN; Mary A. Sheridan, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 91–1865.

United States Court of Appeals, Fourth Circuit.

Argued May 4, 1992.

Decided July 8, 1992.

**73**

Richard A. Salzman, Kator, Scott & Heller, Washington, D.C., argued (Michael J. Kator, Stephen Z. Chertkof, on the brief) for plaintiffs-appellants.

Carole Faith Kagan, Civ. Div., U.S. Dept. of Justice, Washington, D.C., argued (Stuart M. Gerson, Asst. Atty. Gen., Mark B. Stern, Civ. Div., U.S. Dept. of Justice, Richard D. Bennett, U.S. Atty., Baltimore, Md., on the brief), for defendant-appellee.

Before ERVIN, Chief Judge, HAMILTON, Circuit Judge, and KELLAM, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

CLYDE H. HAMILTON, Circuit Judge:

The plaintiffs in the district court, Michael and Mary Sheridan, husband and wife, appeal the order of the district court granting summary judgment to the defendant, the United States, on the Sheridans' claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671, and denying their motion for summary judgment on the same claim. Plaintiffs allege that the negligence of the defendant resulted in a drunken, off-duty serviceman shooting at and injuring plaintiffs with a gun which the serviceman stored in his base quarters in violation of Navy regulations. We affirm the judgment of the district court.

1. When this case was originally before this court, and subsequently before the United States Supreme Court, plaintiffs asserted certain facts, see *supra* page 73, concerning the conduct of three navy corpsmen, which were contested by

I

As now presented to the court, the underlying facts of the case are undisputed.[1] On February 6, 1982, Robert Carr, a naval serviceman was stationed at the Bethesda Naval Medical Center. He lived on base. Carr kept a .22 caliber rifle and ammunition in his quarters in violation of base and Navy regulations. Carr's roommate, a serviceman named Johnson, knew the weapon and ammunition were concealed in the room, but did not report the violation. This failure to report the violation was itself a violation of naval regulations which required Navy personnel to report infractions by other servicemen.

Carr became highly intoxicated. After concealing the rifle and ammunition in a uniform bag, Carr eventually proceeded to an area at the edge of the base and began shooting at cars on a public street adjacent to the base. Mrs. Sheridan was injured by glass and bullet fragments when Carr shot at plaintiffs' car. Mr. Sheridan suffered no physical injury, but alleges emotional injury from the incident.

The district court originally dismissed the case by holding that plaintiffs' claims were barred by the intentional tort exception to the FTCA for claims arising out of assault and battery. 28 U.S.C. § 2680. This court affirmed, but the Supreme Court reversed and remanded. *Sheridan v. United States*, 823 F.2d 820 (4th Cir.1987), *rev'd*, 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988). The Court held that to the extent plaintiffs' claims were based on the actions of Carr, the claims were barred by the intentional tort exception. The Court stated, "If nothing more were involved here than the conduct of Carr at the time he shot at petitioners, there would be no basis for imposing liability on the Government." *Sheridan*, 487 U.S. at 401, 108 S.Ct. at 2455. At that point in time, however, plaintiffs also alleged that three Bethesda corpsmen found Carr in a drunken stupor prior to the shooting, attempted to rouse and secure him, but fled and failed

the United States. As noted at oral argument, plaintiffs have dropped their claim based on those disputed facts on this appeal, because discovery did not support, in all respects, the allegations.

to take further action when Carr managed to grab the rifle and brandish it before the corpsmen. The government disputed this allegation, and plaintiffs have not pursued that claim on this appeal. *See supra* note 1. The Court remanded the case to determine if plaintiffs had a cause of action, under Maryland law, arising from acts of the United States independent of Carr's acts. The Court particularly noted that the failure of the three corpsmen to secure an obviously drunken and armed individual might state a claim under Maryland law, *see Sheridan,* 487 U.S. at 400, 402, 108 S.Ct. at 2455, 2456, but left resolution of this issue to the district court on remand.

On remand, plaintiffs dropped their claim predicated on the alleged conduct of the three corpsmen. Plaintiffs now argue that the United States is negligent *per se* under Maryland law. They contend that the United States assumed a duty of care with respect to the plaintiffs to protect them from the criminal acts of third persons, namely Carr, by adopting regulations restricting the possession of firearms on the naval base. In addition, the Sheridans assert the United States breached those regulations when Carr concealed the weapon and ammunition and Johnson failed to report the violation.

After full briefing, the district court once again granted the government's motion for summary judgment, finding that the plaintiffs failed to state a claim for relief under Maryland law on the undisputed facts of the case. The district court based its holding on several alternate grounds. *See generally, Sheridan v. U.S.,* 773 F.Supp. 786, 788–89 (D.Md.1991). This appeal followed.

## II

■ We affirm. The United States is not liable for negligence under Maryland law because, given the circumstances presented on this appeal, it owed no duty to plaintiffs to protect them from the intentional criminal acts of Carr.[2] *See Furr v. Spring Grove State Hospital,* 53 Md.App. 474, 454 A.2d 414 (1983) (no general duty of care to protect another from harm by third parties) (citing *Pope v. State,* 284 Md. 309, 396 A.2d 1054 (1979)).

■ Neither has the United States voluntarily assumed such a duty under a "Good Samaritan" theory of liability by promulgating the regulation prohibiting naval personnel from possessing weapons on base except under certain circumstances and the regulation generally requiring naval personnel to report all infractions.[3] There is simply no evidence that the actions of the government in promulgating and carrying out, or failing to carry out, the regulations increased the risk of harm to the plaintiffs or induced reliance in the plaintiffs, prerequisites to the imposition of liability under a Maryland "Good Samaritan" theory. *See supra* note 3. Plaintiffs suffered no greater risk of harm on the streets surrounding Bethesda Naval Medical Center from a serviceman such as Carr because of the gratu-

**2.** Liability for negligence under Maryland law is predicated upon proof of three elements: (1) a duty of care running from the defendant to the plaintiff, (2) breach of that duty by the defendant, and (3) injury to the plaintiff proximately caused by defendant's breach. *Scott v. Watson,* 278 Md. 160, 359 A.2d 548, 552 (1976).

**3.** Assumption of a duty, where none generally exists, and consequent potential liability in negligence under Maryland law are governed by Restatement of Torts (2d) §§ 323, 324A (1965). *See In re Sabin Oral Polio Vaccine Products Liability Litigation,* 774 F.Supp. 952, 954–55 (D.Md.1991), *appeal docketed sub nom., United States v. Miller,* No. 91–2398 (4th Cir. Dec. 31, 1991; oral argument scheduled July 7, 1992). *But see Chew v. Meyer,* 72 Md.App. 132, 527 A.2d 828, 832 (1987) (extending liability beyond § 323 to cover economic loss, not just physical injury). Section 323 provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or ·
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.
>
> *Id.* Section 324A contains similar language, but covers situations where the service is rendered to one person by the defendant for the protection of a third person and liability, therefore runs to the third party. *See Heinrich v. Goodyear Tire and Rubber Co.,* 532 F.Supp. 1348 (D.Md.1982).

itous promulgation of the regulations and their breach than if the United States had never promulgated such regulations in the first instance.

As currently framed, plaintiffs' claim is, in reality, nothing more than a negligent supervision claim which is barred by the intentional tort exception, 28 U.S.C. § 2680, a result not foreclosed by the Supreme Court's decision. *See Sheridan*, 487 U.S. at 403 n. 8, 108 S.Ct. at 2456 n. 8 (reserving the question of whether or not a negligent supervision claim is barred); at 407–08, 108 S.Ct. at 2458 (Kennedy, J., concurring in the judgment) (negligent supervision claim barred); at 411, 108 S.Ct. at 2460 (O'Connor, J., dissenting) (negligent supervision claim barred).

The two regulations upon which plaintiffs rely pertain only to "the conduct of the employment relation between the intentional tortfeasor [Carr] and the Government...." *Id.* at 408, 108 S.Ct. at 2458 (Kennedy, J., concurring). Regulation 1136 governs only the conduct of a "person in the naval service," while Regulation 1139 requires "[p]ersons in the Department of the Navy" to report only infractions of any type by other Navy employees.[4] Neither of the regulations set forth general requirements applicable to all who come into contact with the base, but only set forth internal rules for the supervision of naval employees. To premise a claim on failure to follow these regulations, with nothing more, is simply to assert that naval employees were not properly supervised. "Allegations of 'negligent supervision' on the part of government officials are ... insufficient, because the United States owes no general duty to the public to supervise its employees or agents with care." *Thigpen v. United States*, 800 F.2d 393, 399 (4th Cir.1986) (Murnaghan, J., concurring).

## III

We also conclude that plaintiffs' injuries were not proximately caused by the breach of the regulations by the United States. Plaintiffs presently attempt to proceed under a theory of negligence *per se*. Under Maryland law, violation of a statute or regulation does not constitute negligence *per se*, but is only evidence of negligence. *Pahanish v. Western Trails, Inc.*, 69 Md.App. 342, 517 A.2d 1122, 1132 (1986). Proof that the statutory or regulatory violation was a proximate cause of the injury sustained is necessary. *Id.* In this case, the criminal act of Carr in shooting at plaintiffs is the legal cause of plaintiffs' alleged injuries. *Exxon Corporation v. Amoco Oil Company*, 875 F.2d 1085 (4th Cir.1989). Given the complete absence in the record of any evidence of other shootings occurring because of weapons stored on base or any evidence that Carr, in particular, was unstable or had previously threatened bodily harm with the rifle, there is simply not "an acceptable nexus between the negligent act [Johnson's failure to report] and the ensuing harm [random shootings of civilians off the base premises]" to satisfy the requirement that the harm be a foreseeable, rather than a "highly extraordinary," consequence of Johnson's dereliction. *Henley v. Prince George's County*, 305 Md. 320, 503 A.2d 1333, 1340 (1986).

## IV

For the reasons stated above, we affirm the judgment of the district court.

AFFIRMED.

---

**4.** Regulation 1136 states in full:
   Except as may be necessary to the proper performance of his duty or as may be authorized by proper authority, no person in the naval service shall:
      a. Have concealed about his person any dangerous weapon, instrument or device; or any highly explosive article or compound.
      b. Have in his possession any dangerous weapon, instrument, or device or any highly explosive article or compound on board any ship, craft, aircraft, or in any vehicle of the naval service or within any base, or other place under naval jurisdiction.
Regulation 1139 provides:
   Persons in the Department of the Navy shall report to proper authorities offenses committed by persons in the Department of the Navy which come under this observation.
Regulation 1139 was changed and renumbered in 1990. Appellee's Brief at 4.