**Kenneth C. ROSSIGNOL, et al.,**

v.

**Richard VOORHAAR, et al.**

**No. CIV.A.WMN–99–3302.**

United States District Court, D. Maryland.

May 5, 2004.

Ashley Ivy Kissinger, Levine, Sullivan and Koch LLP, Seth D. Berlin, Levine Sullivan and Koch LLP, Alice Neff Lucan, Alice Neff Lucan Attorney at Law, Washington, DC, for Plaintiffs.

John F. Breads, Jr., Local Government Insurance Trust, Columbia, MD, Daniel Karp, Allen, Karpinski, Bryant and Karp PA, Kevin Bock Karpinski, Allen, Karpinski, Bryant and Karp PA, Baltimore, MD, for Defendants.

### MEMORANDUM

NICKERSON, Senior District Judge.

Before the Court are: Plaintiffs' Motion for Summary Judgment on Liability Issues (Paper No. 69); Cross–Motion for Summary Judgment filed by Defendants Doolan, Long, Merican, Myers, Willenborg, and Young (the Off-duty Deputies) (Paper No. 73); Defendant Fritz's Cross–Motion for Summary Judgment (Paper No. 74); Cross–Motion for Summary Judgment filed by Defendants Voorhaar, Alioto, and Board of County Commissioners for St. Mary's County (Paper No. 75). These motions were previously addressed by this Court in a Memorandum and Order dated February 21, 2002. That order granted summary judgment to Defendants on Plaintiffs' federal claims on the grounds that Defendants had not acted under color of state law, and dismissed Plaintiffs' state law claims without prejudice. The case was then appealed to the Fourth Circuit, which reversed this Court's decision, holding that Defendants Fritz, Voorhaar, and the Off-duty Deputies had acted under color of state law, and accordingly, had violated Plaintiffs' constitutional rights.

The parties' cross motions for summary judgment now return to this Court on remand for a determination as to: (1) whether any of the defendants will benefit from qualified immunity or municipal immunity; (2) the extent to which the defendants' conduct is actionable under the Maryland Declaration of Rights and Maryland common law; and (3) the extent to which Defendant Alioto participated in the seizure, and thus, his ultimate liability. *See Rossignol v. Voorhaar*, 316 F.3d 516, 527 n. 3 (4th Cir.2003). All parties rest on their original pleadings, which are ripe for decision. Upon review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that the bulk of Defendants' motions will be denied and Plaintiffs' will be granted.

### I. BACKGROUND

This action, raising Federal Constitutional claims under 42 U.S.C. § 1983, as

well as claims under the Maryland Declaration of Rights and Maryland common law, was filed by Plaintiff Kenneth Rossignol[1] against various defendants for their organized efforts to suppress the distribution of the election day issue of his newspaper, *St. Mary's Today.* The defendants in this suit are divisible into three separately represented groupings: (1) Sheriff Voorhaar, Deputy Alioto, and the Board of County Commissioners for St. Mary's County (the County Defendants); (2) the Off-duty Deputies who carried out the purchasing of Plaintiff's newspapers; and (3) Richard Fritz, a candidate for St. Mary's County State's Attorney in the 1998 elections. The largely undisputed facts were set forth at length in this Court's first memorandum as well as the opinion rendered by the Fourth Circuit, and need not now be recounted in any great detail.

Certain findings by the Fourth Circuit, however, render moot several issues not reached in this Court's first opinion, yet argued in the briefs. These include the facts that "[b]oth Voorhaar and Fritz personally supported and participated in the mass purchase." *Rossignol,* 316 F.3d at 521. Because the Fourth Circuit found, in no uncertain terms, that the Sheriff and the State's Attorney candidate were part of the quasi-private conspiracy pursued under color of state law, this Court need not reach either defendant's arguments that they were not subject to suit as co-conspirators, or that Fritz, as a private individual, was not subject to suit under § 1983.[2] Furthermore, the Fourth Circuit's opinion removed from this court's purview, any claim that Defendants' actions did not violate Plaintiff's First Amendment rights.[3] The Court will thus limit its discussion to the remaining defenses to liability specifically mentioned in the final footnote of the Fourth Circuit's opinion.

## II. LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of

---

**1.** As noted in this Court's first opinion, the Complaint was filed on behalf of both Rossignol and "Island Publishing Company," the entity through which he published *St. Mary's Today.*

Defendants argue, and Rossignol does not dispute, that Island Publishing Company must be dismissed as an improper party due to the forfeiture of its corporate charter in 1992. Although the Court sees no practical effect on the relief sought by Rossignol, Island Publishing Company will nonetheless be dismissed. Hereinafter, the Court will treat the claims as asserted by Rossignol alone and refer to Plaintiff in the singular.

**2.** *See id.* at 527 ("Here, a local sheriff, joined by a candidate for State's Attorney, actively encouraged and sanctioned the organized censorship of his political opponents by his subordinates, contributed money to support

that censorship, and placed the blanket of his protection over the perpetrators.").

**3.** *Id.* at 521 ("there can be no question that, if defendants acted under color of state law, they violated these plaintiffs' constitutional rights."). While the Fourth Circuit did not explicitly address Rossignol's claims concerning the violation of his Fourth and Fourteenth Amendment rights, it did refer to the defendants' acts as both a "seizure" and a "prior restraint," *id.* at 522, two terms classically linked to Fourth and Fourteenth Amendment violations. This Court views the analysis concerning violation of the First Amendment to be inextricably intertwined with violations of the Fourth and Fourteenth Amendments, and will treat the Fourth Circuit's color of law finding as determinative that violations of all three amendments resulted from Defendants' acts.

the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party is entitled to have "all reasonable inferences ... drawn in its respective favor." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1129 (4th Cir. 1987).

If the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits or other documentation which demonstrates that a triable issue of fact exists for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Unsupported speculation is insufficient to defeat a motion for summary judgment. *Felty,* 818 F.2d at 1128 (citing *Ash v. United Parcel Serv., Inc.,* 800 F.2d 409, 411–12 (4th Cir.1986)).

When both parties file motions for summary judgment, the court applies the same standards of review. *Taft Broadcasting Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991); *ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 45 n. 3 (4th Cir.1983) ("The court is not permitted to resolve genuine issues of material facts on a motion for summary judgment—even where ... both parties have filed cross motions for summary judgment") (emphasis omitted), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v.*

*Hartford Acc. and Indem. Co.,* 627 F.Supp. 170, 172 (D.Md.1985)(quoting Wright, Miller & Kane, *Federal Practice and Procedure: Civil* 2d § 2720 (2d ed.1993)).

## III. DISCUSSION

### A. Qualified Immunity

The Off-duty Deputies, Sheriff Voorhaar, and Deputy Alioto all argue that if they acted under color of law and violated the plaintiff's federal constitutional rights, they should nevertheless be entitled to summary judgment based on qualified immunity.[4] Qualified immunity is a doctrine that shields government officials performing discretionary functions from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Generally, when the doctrine of qualified immunity is raised as a defense, the Court must first identify the right infringed by the challenged conduct. *Taylor v. Waters,* 81 F.3d 429, 433 (4th Cir.1996). The Court then considers whether, at the time of the violation, the right was clearly established, and whether a reasonable person in the official's position would have known that his conduct would violate that right." *Id.* (quoting *Gordon v. Kidd,* 971 F.2d 1087, 1093 (4th Cir.1992)).

Here, the Fourth Circuit has clearly determined that Rossignol's First Amendment rights were infringed by Defendants' conduct. The arguments in the briefs go largely to the scope of Rossignol's rights and the attendant consequences of a reasonableness inquiry into Defendants' conduct. Rossignol frames the issues broadly, as "(1) the right to speak critically of local

---

4. Fritz, as a private citizen at the time of the incident, cannot benefit from qualified immu-

nity, which only pertains to government officials.

government officials without imposition of a prior restraint; and (2) the right to be free from government officials suppressing speech in retaliation for the content of past speech critical of them." Pl.'s Opp./Reply at 32. Defendants, on the other hand, frame the issue in extremely narrow terms, as "the right not to have off-duty law enforcement officers, without the exercise of any police authority whatsoever, purchase a 'bunch' of newspapers[.]" Off-duty Deputies' Cross Motion for Summary Judgment and Opp. at 39; *see also* County Defendants' Cross Motion for Summary Judgment and Opp. at 27. The Court need not decide which framing of the issues comports most closely with qualified immunity case law as the facts of this case do not easily lend themselves to a rigid application of the standard qualified immunity analysis. Therefore, this Court will resolve the immunity issue without resort to the intricacies of the parties' rights-based arguments.

The typical qualified immunity case involving police officers centers around action that is unquestionably taken in the course of the officers' discretionary function of enforcing a community's laws. Thus, whether the questioned action was taken within the scope of the officer's employment is rarely debated within this legal genre. This element is nevertheless a crucial piece of a qualified immunity analysis, for without it, the claim of immunity is not permitted.[5] Indeed, it would be nonsensical to allow a defense created to prevent

the "fear of personal monetary liability and harassing litigation [from] unduly inhibit[ing] officials in the discharge of their duties[,]" *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), to apply to a situation in which police officers acknowledge that they were acting completely outside of any relevant law enforcement duties. The Fourth Circuit's own recitation of the qualified immunity standard of analysis, reinforces this truism. *See Knussman v. State of Maryland,* 272 F.3d 625, 633 (4th Cir.2001) (Police officers "are protected by qualified immunity when performing their duties within the scope of their employment") (quoting *Sigman v. Town of Chapel Hill,* 161 F.3d 782, 786 (4th Cir.1998)).

In the instant case, Rossignol has not alleged that Defendants were acting within the scope of their employment. The Off-duty Deputies, for their part, "have repeatedly asserted" that they acted outside the scope of their employment. Off-duty Deputies' Reply at 41.[6] In the face of these positions and the undisputed facts of the case, this Court would be hard-pressed to find that Defendants acted within the scope of their employment in order to raise the potential of qualified immunity.

■ Defendants' briefing focuses on the lack of action under color of law as the main counter-point to the bulk of Rossignol's claims. The effectiveness of this strategy is evidenced by this Court's being persuaded, upon its first consideration of the case, that despite its abhorrence for

---

**5.** Defendants admit as much in their briefs. Off-duty Deputies' Reply at 29 ("Defendants' assertion of qualified immunity is, of course, contingent upon this Court's finding in the first place that they acted within the scope of their employment.").

**6.** *See also* County Defendants' Reply at 43 (Arguing that the defendants' actions could not have been within the scope of their employment, since "each and every individual

defendant who participated in the collective purchase of papers testified that their motivation was personal; that their purchase of the newspapers was not directed by the Sheriff; that the purchases occurred while each was on leave or off-duty; and that the purchases of the newspapers was unrelated to any of their official duties as law enforcement officers.").

Defendants' actions, they were not taken under color of law sufficient to trigger a cause of action under § 1983. With the benefit of the Fourth Circuit's contrary determination, however, this Court can now only conclude that this case falls into that category of actions taken under color of law, yet outside of the scope of the actors' employment as law enforcement officers. *See, e.g., Rambo v. Daley,* 68 F.3d 203, 206 (7th Cir.1995) (refusing to reach the merits of a qualified immunity defense asserted by police officers involved in a violent arrest outside of their jurisdiction, because the defendants could not "claim that they acted as private citizens while simultaneously seeking shelter under a doctrine that only protects public officials."). Accordingly, the same arguments made in Defendants' briefs that persuaded this Court in its prior opinion that their actions were not taken under color of state law, now lead it to conclude that the defense of qualified immunity is unavailable to any of the defendants in this action.

## B. Individual Liability Under the Maryland Declaration of Rights and Maryland Common Law

Rossignol's claims under Articles 40, 24, and 46 of the Maryland Declaration of Rights, although asserted as common law actions for damages rather than through an enabling statute like § 1983, are nonetheless analyzed in the same manner as the corresponding Federal Constitutional violations under the First, Fourth, and Fourteenth Amendments. *See DiPino v. Davis,* 354 Md. 18, 50, 729 A.2d 354 (1999). Accordingly, the Court's preliminary determination that Defendants violated Rossignol's Federal Constitutional Rights equates to a finding that Rossignol's rights granted by Maryland's Declaration of Rights were also violated.

■ Although Defendants do not dispute this principle, they assert that statutory immunity prevents liability from attaching to the Off-duty Deputies, Voorhaar, and Alioto for claims based on the Maryland Declaration of Rights or common law claims for tortious interference with business relations and civil conspiracy. This argument is based on a provision of the Maryland Code which holds state personnel immune "from liability in tort for a tortious act or omission that is within the scope of the public duties of the state personnel and is made without malice or gross negligence[.]" Cts. & Jud. Pro., § 5–522(b). Because the phrase "in the scope of public duties" is coextensive with the common law concept of "scope of employment," *Sawyer v. Humphries,* 322 Md. 247, 254–58, 587 A.2d 467 (1991), this defense fails for the same reasons detailed in part A, *supra.*

### 1. Tortious Interference with Business Relations

■ Rossignol asserts that Defendants' seizure of his newspapers constitutes a tortious interference with his lawful business relationships. The required elements of this tort in Maryland are: "(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiff[ ] in [his] lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Natural Design, Inc. v. Rouse Co.,* 302 Md. 47, 70–71, 485 A.2d 663 (1984) (quoting *Willner v. Silverman,* 109 Md. 341, 355, 71 A. 962 (1909)). Maryland courts have further required that the interfering acts be independently wrongful or unlawful to allow recovery. *See, e.g., Travelers Indemnity v. Merling,* 326 Md. 329, 343, 605 A.2d 83 (1992), *cert. denied,*

506 U.S. 975, 113 S.Ct. 465, 121 L.Ed.2d 373 (1992).

█ The Off-duty Deputies and Fritz challenge this last requirement because "there is nothing unlawful in simply purchasing newspapers that are for sale." Off-duty Deputies' Cross Motion for Summary Judgment and Opp. at 47; Fritz's Cross Motion for Summary Judgment and Opp. at 29. Having already held that Defendants' acts violated both federal and state constitutional protections, however, the Court concludes that there is no merit to Defendants' position.[7] The County Defendants also insist that the second prong is lacking because "there is no evidence that any defendant harbored the intent of damaging Rossignol's business." County Defendants' Cross Motion for Summary Judgment and Opp. at 47. Despite Defendants' contention that their acts were intended as a protest, they cannot escape from the rule that "actor[s] desire[ ] to cause consequences of [their] acts ... that are substantially certain to result[.]" Restatement (Second) of Torts § 8A. Thus, by preventing distribution of the newspaper, Defendants necessarily intended to "interfer[e] with the relationship that Rossignol had with his readers, who would not be able to purchase the newspaper, and his advertisers, whose advertisements would not be seen." Pl.'s Opp./Reply at 46.

Had this tortious act been more than a one time occurrence, the Court is convinced that Rossignol would be at risk of losing both readers and advertisers, the lifeblood of a healthy newspaper. The event's isolated nature, however, leaves only the extent of Rossignol's damages in dispute. Accordingly, the Court will grant Plaintiff's motion for summary judgment (and deny Defendants') as to liability, with damages to be assessed at trial.

### 2. Civil Conspiracy

█ Rossignol also accuses the defendants of participating in a civil conspiracy to deprive him of his rights. A civil conspiracy under Maryland law "is a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal with the further requirement that the act or the means employed must result in damages to the plaintiff." *Green v. Washington Suburban Sanitary Comm'n*, 259 Md. 206, 221, 269 A.2d 815 (1970). It is not necessary that each of the defendants named in the conspiracy commit an overt act that is itself unlawful, as long as they commit some overt act in furtherance of the unlawful enterprise. *Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 99 Md. App. 696, 706–07, 639 A.2d 173 (1994), *aff'd*, 340 Md. 176, 665 A.2d 1038 (1995).

█ Defendants' counter to this tort is again that the mass newspaper purchase was lawful. As previously explained, this position is no longer tenable given the conclusions of the Fourth Circuit. Furthermore, the injury to Rossignol's constitutional rights suffices to satisfy the damages element. Accordingly, summary judgment will be granted to Plaintiff (and against Defendants) as to liability, with the amount of damages remaining to be tried.

### C. Municipal Liability

█ Rossignol asserts that pursuant to *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and its progeny, St. Mary's County should be liable under § 1983 for the acts of the individual defendants which violated

---

**7.** Additionally, as noted by the Fourth Circuit, Defendants' conduct was arguably in breach of the Newspaper Theft Act, Md.Code Ann., Criminal Law § 7–106(b).

his constitutional rights. The Supreme Court established in *Monell* that there is no § 1983 liability for local governments under the theory of respondeat superior. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government is responsible under § 1983." 436 U.S. at 694, 98 S.Ct. 2018. While a policy can often be deduced from consistent and widespread action by a municipality's agents, it may also "be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Here, Rossignol asserts that the County's liability stems from Sheriff Voorhaar's participation in, and ratification of, the illegal newspaper seizure.[8] *See Keenan v. City of Philadelphia*, 983 F.2d 459, 469 (3d Cir. 1992) (noting that jury's finding police commissioner personally liable reinforced municipal liability).

Both Plaintiff and the County Defendants agree that for purposes of a *Monell* analysis, Sheriff Voorhaar is the final policymaker concerning law enforcement in St. Mary's County. The County Defendants assert, however, that Sheriff Voorhaar and Deputy Alioto are state, not county, officers. *See* Md.Code Ann., State Gov't § 12–101(a)(6) (defining county sheriffs and deputy sheriffs as state personnel for purposes of the Maryland Tort Claims Act). If the Court were to agree, then the § 1983 claims against Voorhaar and Alioto in their official capacities would be barred by Eleventh Amendment immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (holding that, in suits for damages, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983[,]" since suits against officials acting in their official capacity are indistinguishable from suits "against the State itself").

In *McMillian v. Monroe County*, 520 U.S. 781, 786, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), the Supreme Court held that whether a sheriff is considered a county or a state official, when acting in his law enforcement capacity, for purposes of § 1983 depends on an analysis of state law. That the Alabama constitution, at issue in that case, listed sheriffs as state officers strongly supported their interpretation as state officers for § 1983 purposes, but was by no means dispositive of the issue. *Id.* at 787, 117 S.Ct. 1734; *see also Ritchie v. Donnelly*, 324 Md. 344, 357, 597 A.2d 432 (1991) ("While under Maryland law, a sheriff is a state official, the state law classification is not dispositive for purposes of § 1983."). In concluding that the Monroe County sheriff was a state official

---

8. Rossignol also makes the belated argument on page 51 of his Opposition/Reply that the County Commissioners themselves participated in a custom, practice or policy by the Office of the Sheriff of violating Plaintiff's right to freedom of expression. This charge is drawn from page 10 of Plaintiff's Separate Statement of Additional Facts That Preclude Entry of Summary Judgment in Defendant's Favor, which asserts that "[i]n 1991, after *St. Mary's Today* began aggressively reporting on County expenditures and other activities of the Board of County Commissioners, the Board voted to change the circulation requirements for obtaining legal advertising contracts with the County to specifically exclude *St. Mary's Today* from consideration." The Court concludes that this allegation, whether or not reflective of a First Amendment violation, is completely separate from the acts by the Sheriff and his Deputies complained of as the basis for the instant suit. Accordingly, the Court will not consider this argument in reference to the instant motions for summary judgment.

when acting in his law enforcement capacity, the Supreme Court minimized the importance of state law provisions establishing that: (1) the sheriff's salary was paid out of the county treasury; (2) the county provided the sheriff with materials and reimbursed him for reasonable expenses; (3) the sheriff's jurisdiction was limited to the county's borders; and (4) the sheriff was elected by county voters. *Id.* at 791, 117 S.Ct. 1734. In contrast, heavy emphasis was placed on the fact that state officials maintained a degree of control over the Alabama sheriffs while the counties, lacking any law enforcement powers of their own, could not "instruct the sheriff how to ferret out crime, how to arrest a criminal, or how to secure evidence of a crime." *Id.* at 790, 117 S.Ct. 1734. Finally, the *McMillian* Court had the benefit of a persuasive Alabama Supreme Court opinion considering similar issues which held that sheriffs were state officers. *Id.* at 789, 117 S.Ct. 1734 (citing *Parker v. Amerson,* 519 So.2d 442 (Ala.1987)).

Here, Maryland county sheriffs are also designated state constitutional officials for purposes of state law, Md. Const. art. IV § 44, with their salaries set by the state rather than the individual counties. *See* Md.Code Ann., Cts. & Jud. Proc. § 2–309. Maryland's highest court has previously engaged in a detailed analysis of Maryland's Constitution and Code to conclude that a sheriff and his deputies are state employees. *Rucker v. Harford County,* 316 Md. 275, 558 A.2d 399 (1989). The same factors pointing toward the sheriff's status as a county official (compensation from country treasury, limitations on some aspects of their jurisdiction, election by county voters, etc.) may be present, but have already been all but discounted by the Supreme Court.

■ The major difference propounded by Plaintiff between *McMillian* and the instant case is that St. Mary's County retains a degree of law enforcement power through its ability "to provide for the appointment of county police and to prescribe their duties and fix their compensation." Md.Code Ann., Art. 25 § 3(q). This unexercised authority, however, does nothing to change the County's basic impotence to "directly abridge the functions and duties of a sheriff under the common law and enactments of the General Assembly." *Rucker,* 316 Md. at 288, 558 A.2d 399. Instead, direct control over the sheriff in St. Mary's and other Maryland counties remains solidly with the State General Assembly and the judiciary. *Id.* Accordingly, this Court concludes that the St. Mary's County Sheriff and his Deputies are state officials when acting in their law enforcement capacities. It follows that the official capacity claims raised against Voorhaar and Alioto under § 1983 are barred by the Eleventh Amendment. Furthermore, as the only claims plead against the Defendant County Commissioners for St. Mary's County were asserted for Federal Constitutional violations through § 1983,[9] and those claims are no longer viable pursuant to the analysis above, the County Commissioners will be dismissed from this action.

### D. Deputy Alioto

■ The Fourth Circuit's opinion, while effectively dismissing Sheriff Voorhaar's factual arguments in opposition to summary judgment, did not dispose of those made by Deputy Alioto. Plaintiff does not move for summary judgment against Defendant Alioto, the only deputy on-duty on the night of the seizure, due to the allegation that there are material issues of fact as to the extent of his participation in the

9. *See* Compl., Counts IV–VI; Pl.'s Opp./Reply    at 54, n41.

planning and execution of the newspaper seizure. The County Defendants counter that summary judgment is appropriate in favor of Defendant Alioto because the evidence linking him to the seizure is "nothing more than conjecture." County Defendant's Cross Motion for Summary Judgment and Opp. at 21. This Court agrees with Plaintiff's assertion that the evidence that Alioto attended a planning meeting and met with certain of the other defendants on the night of the seizure, together with Rossignol's testimony that he overheard Alioto's attempts to provide surveillance assistance via radio, create a material issue of fact more appropriate for resolution by a jury. Accordingly, summary judgment for Defendant Alioto will be denied.[10]

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment will be granted as to the personal liability of the Off-duty Deputies, Fritz, and Voorhaar and denied in all other respects. The Cross Motions for Summary Judgment filed by the Off-duty Deputies and Defendant Fritz will be denied. The Cross Motion for Summary Judgment filed by the County Defendants will be: granted as to the dismissal of Island Publishing Company; granted as to the Board of County Commissioners of St. Mary's County; and denied in all other respects. An order consistent with this memorandum will issue.

---

10. The Court will nonetheless take Plaintiff at his word that he "do[es] not wish to burden the parties or the Court with a trial devoted solely to establishing Alioto's liability" and will accordingly expect Plaintiff to voluntarily dismiss him from this suit upon receiving this Memorandum establishing the liability of the remaining individual defendants. *See* Pl.'s Motion for Summary Judgment at 2–3, n. 2.