**Claymon STRONG, et al., Plaintiffs**

v.

**Regan Orin DYAR, et al., Defendants.**

**Civil Nos. PJM 07–359, PJM 07–948.**

United States District Court,
D. Maryland.

July 23, 2008.

J.B. Dorsey, III, J.B. Dorsey and Associates, Washington, DC, for Plaintiffs.

Harold L. Burgin, Stoner Preston & Boswell Chtd., Jason Daniel Medinger, Office of the United States Attorney, Baltimore, MD, Neil Dachis, Columbia, MD, for Defendants.

## *MEMORANDUM OPINION*

PETER J. MESSITTE, District Judge.

Claymon and Felicia Strong have sued the United States Air Force and its Secre-

tary (collectively, "USAF'"), alleging that it negligently supervised Airman Regan Dyar when Dyar drunkenly lost control of his car and hit Claymon Strong. The Strongs allege that Dyar was acting in the scope of his employment at the time of the accident, or in the alternative, that USAF had a duty, to monitor, treat and stop Dyar's drug use and prevent him from causing harm to the community. USAF has filed a Motion to Dismiss with respect to the counts against them, which the Strongs oppose. Because as to one of these counts the Court has considered matters outside the pleading, the motion must also be construed as a Motion for Summary Judgment.[1]

Having considered the parties' briefs and supplemental submissions, the Court **GRANTS** USAF's Motion for Summary Judgment as to Count I and the Motion to Dismiss as to Counts II, III and IV.

## I.

Regan Dyar, an enlisted Airman, worked in the Heating, Ventilation, and Air Conditioning (HVAC) unit of the 89th Civil Engineer Squadron stationed at Andrews Air Force Base (AFB) in Suitland, Maryland. With the exception of a brief period when he was deployed to Pakistan and another when he was assigned to a one-time job at a military installation in Danielsville[2], his repair jobs were all physically located at Andrews AFB. His regular duty hours were Monday through Friday from 7:30 a.m. to 4:30 p.m.

Prior to April 16, 2005, Dyar had been arrested numerous times and found in possession of marijuana and other drugs. As a result, he had been sent for substance abuse counseling and treatment to the Air Force's Alcohol and Drug Abuse Prevention Treatment program (ADAPT). At that time, except for an order suspending his *on-base* driving privileges, Dyar was under no restrictions from the Air Force.

On April 16, 2005, while returning from fishing with friends at Lake Cosca, a state park located approximately 10 miles southwest of Andrews, Dyar lost control of the personal vehicle he was driving, a Lexus 2–door coupe, and struck Claymon Strong. During the accident, Dyar's passenger, Joshua Snodgrass, was thrown from his seat in the vehicle and died. A subsequent blood alcohol test showed that Dyar's blood alcohol content at the time of the accident was .09, above the legal limit.

After being charged by the State of Maryland with nine criminal offenses, Dyar pleaded guilty to homicide by motor vehicle while under the influence of alcohol. The remaining counts were nolle-prossed. Dyar was sentenced to five years in prison, with all but 18 months suspended.

In Count I of their Complaint, the Strongs claim that Dyar acted recklessly and negligently by failing to: (a) stay on the Air Force base in accordance with the Air Force's orders; (b) refrain from driving when under the influence of alcohol and drugs; (c) drive safely; and (d) warn Strong that his vehicle was approaching and was out of control.

In Count II, the Strongs claim that USAF acted recklessly and negligently in

---

**1.** To the extent matters require considerations of evidence outside of the pleadings, a motion to dismiss must be treated as a motion for summary judgment. Fed.R.Civ.P. 12(d). While a plaintiff has a right to notice that a motion to dismiss will be so treated, *Id.,* based on the Strongs' response, it is evident that they have appropriately construed the motion to dismiss as inclusive of a motion for summary judgment. Fed.R.Civ.P. 5(a)(1); Fed.R.Civ.P. 12(d).

**2.** It is unclear what state Danielsville is located in. *See* Deposition of Regan Dyar, Gov't's Ex. 1 at 14.

failing to: (a) perform appropriate training, teaching, and evaluations of its members, servants and agents ("members"); (b) timely recognize and warn Strong of its dangerous members; (c) administer appropriate controls, discipline and restraints over its dangerous members, particularly Dyar; and (d) discharge Dyar after his repeated violations of Air Force orders, rules, and regulations.

In Count III, the Strongs claim that the Secretary of the USAF acted recklessly and negligently in failing to: (a) perform appropriate teaching, training and evaluations of its members; (b) recognize and warn Strong of dangerous activities of its members; and (c) administer reasonable and appropriate controls and restraints on its members.

Count IV, an action for loss of consortium brought by the Strongs as husband and wife, asks for damages from Defendants jointly and severally.

Earlier in these proceedings, the Court held a hearing and deferred judgment on USAF's Motion to Dismiss in order to allow the parties to submit additional information as to whether Dyar was acting within the scope of his employment at the time of the accident and also to explore any testing, diagnosis, treatment and restrictions that USAF may have made with respect to Dyar.

## II.

USAF argues that neither the Air Force nor its Secretary can be sued in their own names under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, et seq. Rather, they say, the FTCA only waives sovereign immunity for suits brought against "the United States." 28 U.S.C. § 2674. More importantly, USAF contends that the Strongs cannot establish that Dyar was acting in the scope of his employment when the accident occurred because Dyar and his friends admit that they were fish-

ing at Lake Cosca just before the accident. With respect to the Strongs' negligent supervision claim, USAF contends that the enforcement of any restriction it may have placed upon Dyar was a discretionary function, and therefore not actionable under the FTCA. Finally, the loss of consortium claim against USAF fails because no claim of negligence has been stated against USAF.

The Strongs submit that, at the time of the accident, Dyar was acting within the scope of employment because, as a drug informant for the Air Force's Office of Special Investigations (OSI), he had been placed under surveillance to identify other drug users at Andrews and in the military in general. They argue further that even if Dyar was not acting in the scope of employment, other Air Force personnel were acting in the line of duty when they failed to appropriately control and supervise him. In this regard, the Strongs point to the clinical social workers' awareness of Dyar's growing drug and alcohol problem such that, the Strongs submit, USAF had a duty to control Dyar. Similarly, say the Strongs, Air Force security personnel had a duty to enforce base orders that were in place to prevent Dyar from driving off and harming others.

## III.

A. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "raises the question of whether the court has the competence or authority to hear the case." *Davis v. Thompson,* 367 F.Supp.2d 792, 799 (D.Md.2005). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir.1999). When a defendant challenges subject matter jurisdiction, the court "is to regard the pleadings as mere evidence on the issue, and may consider

evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* The court may properly grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis,* 367 F.Supp.2d at 799. When a governmental entity is sued and Congress has not waived sovereign immunity for the claim, sovereign immunity deprives the court of jurisdiction to hear the case. *See Global Mail Ltd. v. United States Postal Serv.,* 142 F.3d 208, 210 (4th Cir.1998).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir.1992). In its determination, the court must consider all well-pled allegations in a complaint as true and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir.1999). The court, however, need not accept conclusory factual allegations devoid of any reference to actual event, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir.1979), unsupported legal allegations, *Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir.1989), or legal conclusions couched as factual allegations, *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1965, 1974, 167 L.Ed.2d 929 (2007).

**B.** Under Federal Rule of Civil Procedure 56, a court will enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *See Khoury v. Meserve,* 268 F.Supp.2d 600, 607 (D.Md.2003). Nevertheless, " '[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.' " *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.,* 455 F.Supp.2d 399, 410 (D.Md.2006) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A district court has an "affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (quoting *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548).

**IV.**

■ The Court agrees that the Strongs have filed suit against the incorrect defendant-instead of suing the United States, they have sued the Air Force and the Secretary of the Air Force. The Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.,* provides a limited waiver of sovereign immunity, *see Suter v. United States,* 441 F.3d 306, 310 (4th Cir.2006), and such waivers must be strictly and narrowly construed. *See Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). Since the FTCA only waives sovereign immunity for suits brought against "the United States," 28 U.S.C. § 2674,

suits brought against a federal agency *eo nomine* or against a federal employee individually are dismissible for lack of jurisdiction. *See* 28 U.S.C. § 2679; *see also Holmes v. Eddy*, 341 F.2d 477, 480 (4th Cir.1965).

But even had the United States been properly named, the Court finds that the Strongs' claims against USAF would be subject to dismissal or summary judgment.

## A.

With respect to the allegation that the Government is liable because Dyar was acting in the scope of his employment, the Court finds as a matter of law that Dyar's activities did not constitute conduct within the scope of his employment. For a member of the military or the naval forces of the United States, "acting within the scope of his office or employment ... means acting in the line of duty." 28 U.S.C. § 2671. To determine whether an officer is acting in the line of duty such that the United States may be liable, courts look to the law of the state where the allegedly tortious act occurred. *See Ross v. Bryan*, 309 F.3d 830, 833 (4th Cir.2002). Maryland, where the accident in question occurred, provides that:

"To be within the scope of the employment the conduct must be of the kind the servant is employed to perform and must occur during a period not unreasonably disconnected from the authorized period of employment in a locality not unreasonably distant from the authorized area, and actuated at least in part by a purpose to serve the master."

*Jordan v. W. Distrib. Co.*, 135 Fed.Appx. 582, 585 (4th Cir.2005) (quoting *East Coast Freight Lines, Inc. v. Mayor and City Council of Baltimore*, 190 Md. 256, 285, 58 A.2d 290 (1948)). Thus, where an employee engages in allegedly negligent conduct while off-duty and for personal reasons, such conduct is not within the scope of employment. *See Rossignol v. Voorhaar*, 321 F.Supp.2d 642, 647 (D.Md.2004) (finding that conduct undertaken for personal reasons by law enforcement officers while they were off-duty and driving their personal cars was outside the scope of their employment under Maryland law). Indeed, the Maryland Court of Appeals has held that an employer is not liable for an employee's off-duty operation of the employee's personal vehicle, even where the employee is negligent in driving his personal vehicle to or from his place of employment. *Oaks v. Connors*, 339 Md. 24, 32–32, 660 A.2d 423 (1995). Additionally, where an employee engages in criminal conduct, such conduct is typically considered outside the scope of employment. *See Tall ex rel. Tall v. Board of Sch. Comm'rs*, 120 Md.App. 236, 259, 706 A.2d 659 (1998) (holding that, *inter alia*, employee's criminal conviction for alleged tortious act demonstrated employee was not acting in scope of his employment).

In this case, Dyar was off-duty at the time of the incident and was engaged in personal, recreational activity with friends. He was off-base and driving a non-military vehicle. He had a .09% blood alcohol content. Based on his conduct at the time of the accident, Dyar was charged with nine separate criminal offenses, eventually pleading guilty to homicide by motor vehicle while under the influence of alcohol. These facts belie any conclusion that Dyar was acting within the scope of his employment at the time of the accident.

The Strongs' suggestion that Dyar may have been acting as a confidential informant for the Air Force's Office of Special Investigations (OSI) is unsupported either by the facts or the law. First, there is no evidence that Dyar was working for the OSI. Second, even if he was acting as a confidential informant, the Fourth Circuit has held that the FTCA's discretionary

function exception, pursuant to 28 U.S.C. § 2680(a), bars a suit related to the manner in which an undercover operation is performed by a confidential informant. *See Suter*, 441 F.3d at 310.

The Strongs' theory that Dyar was a "24–7 employee" and thus always "on-duty" is pure conjecture. Maryland has effectively closed the door to this argument. *See Sawyer v. Humphries*, 322 Md. 247, 258–59, 587 A.2d 467 (1991) (a police officer who was on duty 24/7 was not acting in the scope of his employment when he was acting solely for his own personal motives).

For these reasons, the Court grants USAF's Motion for Summary Judgment as to Count I.

### B.

■ Count II and III of the Complaint allege that USAF is liable for failure to enforce regulations and control Dyar. These counts fail to state a claim under Fed.R.Civ.P. 12(b)(6). Enforcement of any restriction USAF may have imposed on Dyar was a purely discretionary function, which Congress exempted from the FTCA's coverage. *See* 28 U.S.C. § 2680(a) (the FTCA does not apply to "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.").

The Supreme Court has set forth a two-tiered analysis for determining whether official conduct is discretionary for purposes of § 2680(a). *See Smith v. Wash. Metro. Area Transit Auth.*, 184 Fed.Appx. 311, 314–15 (4th Cir.2006) (citing *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). First, the court must consider whether the action is a matter of choice for the employee, then it must determine whether the judg-

ment made by the employee "is of the kind that the discretionary function exception was designed to shield, that is, decisions grounded in social, economic, and political policy." *Id.*

Enactment of a regulation or the issuance of an order by the military creates no ministerial obligation of enforcement nor does it constitute an undertaking of an obligation for the benefit of the general public. *See Sheridan v. United States*, 969 F.2d 72, 72 (4th Cir.1992) (construing Maryland law and finding that the United States had not "voluntarily assumed [any duty of care to the general public] by promulgating the regulation prohibiting naval personnel from possessing weapons on base").

While the Strongs have alleged that USAF is liable for its failure to administer appropriate controls and discipline, and that it should have forcibly detained Dyar or at least restricted his activity, a military commander's determination of whether to confine a military serviceman clearly requires elements of judgment and choice. Dyar's on-base driving privileges were restricted because of his previous infractions of driving under the influence of alcohol. Although court martial charges against Dyar may have been in preparation, it remained the discretion of the commanding officer as to whether to confine him or impose any restrictions on his movement in the interim. *See Hanakahi v. United States*, 325 F.Supp.2d 1125 (D.Haw.2002) (where Army serviceman was already on base restriction for alcohol-related infraction and became intoxicated off-base and caused an accident using non-military vehicle, determination of whether to detain the serviceman pending further discipline was a non-actionable discretionary function). Just as the initial decision to limit Dyar's driving was a discretionary determination, any subsequent determinations about

whether to confine him prior to court martial proceedings were also discretionary.

■ The Strongs' allegations of negligence with respect to base exit security personnel are also without merit. There appear to be no Air Force regulations or protocols requiring personnel at entry/exit points to stop and inspect personnel and vehicles exiting a base. Indeed, enforcing a serviceman's compliance with individual orders given to him upon his exiting the base does not appear among the duties assigned to security personnel. Nor is there, under Maryland law, any basis for holding private individuals liable for the kind of breaches of base exit protocols alleged in this case. The FTCA provides that the U.S. can only be held liable "to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Here, the allegation is that USAF was negligent in enforcing military orders and base exit protocols, activities that under Maryland law no private person could be held accountable for. In any case, these regulations were not implemented for the benefit of civilians living off base, such as the Strongs; thus no duty of protection to them can arise therefrom. *See Sheridan,* 969 F.2d at 74 n. 2.

Maryland law also provides no basis for holding private individuals liable for the kind of breaches of drug treatment policies the Strongs allege. Inasmuch as USAF drug regulations were not implemented for the benefit of civilians living off-base, no claim can arise based on the alleged negligent enforcement of those policies

Finally, the Strongs' argument that USAF owed them a duty to court martial Dyar may be imaginative, but holds no water. First, the facts make clear that USAF did not delay in seeking to bring court martial charges against Dyar. But, as with all the decisions USAF made or did not make in this case, decisions of when to arrest a suspect, how long to investigate him, and when to ultimately prosecute him are discretionary functions, and as such any action in that regard is barred by § 2680(a). *See Shuler v. United States,* 448 F.Supp.2d 13, 20 (D.D.C.2006) (dismissing FBI informant's claim that FBI owed him a duty to arrest the perpetrator of crime before he injured plaintiff because the decision of when and how to arrest and prosecute the perpetrator was a discretionary function); *Amato v. United States,* 549 F.Supp. 863, 866 (D.N.J.1982) (dismissing claim against FBI that it should have arrested bank robber who was being surveilled before he perpetrated the crime which caused plaintiff's injuries because "the decision of when to arrest the perpetrators ...' are discretionary functions within the meaning of § 2680(a)"). Finally, as detailed *supra,* the Strongs cannot state a claim based on the regulations governing how OSI investigations and court martial processes should proceed. As with other policies involved in this case, these regulations were not adopted for the benefit of the general public, i.e. for people like the Strongs, but rather for the Air Force's own internal purposes. *See Sheridan,* 969 F.2d at 75.

Counts II and III will therefore be dismissed.

## C.

In Count IV, the Strongs set forth a claim for loss of consortium. Where, as here, USAF cannot be found liable for any underlying tortious activity, that claim necessarily fails.

## V.

For the foregoing reasons, the Court **GRANTS** USAF's Motion for Summary Judgment as to Count I and **GRANTS** USAF's Motion to Dismiss Counts II, III and IV.

A separate order **WILL ISSUE.**

### *ORDER*

Upon consideration of Air Force Defendants' Motion to Dismiss [Paper No. 39], which the Court also construes as a Motion for Summary Judgment, and the Plaintiffs' Oppositions thereto, it is, this 23rd day of July, 2008, for the reasons stated in the accompanying Opinion:

**ORDERED:**

1) Air Force Defendants' Motion for Summary Judgment [Paper No. 39] is **GRANTED** as to Count I;

2) Air Force Defendants' Motion to Dismiss [Paper No. 39] is **GRANTED** as to Counts II and III;

3) Judgment is **ENTERED** in favor of Air Force Defendants and against Plaintiffs Strong;

4) The case remains open as to Defendant Dyar individually.