**Panaiot IGNATIEV, Appellant,**

v.

**UNITED STATES of America, Appellee.**

Nos. 00–5002, 00–5005.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 9, 2000.

Decided Feb. 9, 2001.

Marjorie A. O'Connell argued the cause and filed the briefs for appellants.

Lydia Kay Griggsby, Assistant United States Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, United States Attorney, and R. Craig Lawrence, Assistant United States Attorney.

Before: WILLIAMS and GARLAND, Circuit Judges, and SILBERMAN, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge SILBERMAN.

SILBERMAN, Senior Circuit Judge:

Appellants challenge the dismissal of their tort claims against the federal government. Their suits were dismissed for want of jurisdiction because the challenged omission fell within the discretionary function exception to the Federal Tort Claims Act's waiver of sovereign immunity. We reverse.

### I.

In October 1995 outside the Chancery of Bulgaria in Washington, D.C., two armed individuals attempted to rob Panaiot Ignatiev and Evgeni Mihaylov. A struggle ensued. Mihaylov was shot and killed. Ignatiev survived but suffered various head injuries. In response to the gunfire, officers of the United States Secret Service Uniformed Division were dispatched to the Chancery. By the time they arrived, however, the altercation was over and Mihaylov was dead.

Ignatiev filed an administrative claim under the Federal Tort Claims Act (FTCA),[1] as did Mihaylov's parents as survivors of his estate. After six months elapsed without a response from the government, appellants filed suit. They alleged that the Secret Service was negligent in performing its duty to protect the Chancery, a duty imposed on the United States by treaty and on the Secret Service by statute.

■ The district court dismissed for want of jurisdiction.[2] Though the United States' sovereign immunity is waived for suits brought under the FTCA, that waiver does not extend to suits premised on government actors' exercises of policymaking discretion. The court concluded that foreign embassies' protection was entrusted to the discretion of the Foreign Missions Branch of the Secret Service and that suits for negligent protection were therefore barred.

### II.

If appellants were to rely only on the wording of their complaint they would be swimming upstream. The complaint, which is rather summary, appears to allege only that the Secret Service was negligent in performance of duties imposed by "international law" and the United States Code. It refers to the Vienna Convention on Diplomatic Relations and the Consular Convention between Bulgaria and the United States.[3]

■ Appellants' difficulty is that the Federal Tort Claims Act, which is their cause of action, provides a limited waiver of sovereign immunity. The government is not liable for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion be abused." 28 U.S.C. § 2680(a). To fall within the exception, the act or omission must involve an element of choice and must be based on considerations of public

---

1. 28 U.S.C. §§ 1346(b), 2671 et seq.

2. See Mihaylov v. United States, 70 F.Supp.2d 4, 5 (D.D.C.1999).

3. Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95 (Vienna Convention); Consular Convention Between the United States of America and the People's Republic of Bulgaria, Apr. 15, 1974, U.S.–Bulg., 26 U.S.T. 687 (Consular Convention).

policy. *Berkovitz v. United States,* 486 U.S. 531, 536–37, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). The exception always insulates a "permissible exercise of policy judgment" and never applies "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.*

To be sure, the Vienna Convention obliges signatories to hold "inviolable" the premises of foreign missions and the persons of diplomatic agents. Vienna Convention arts. 22, 29. The host state must "take all appropriate steps to protect the premises of the mission against any intrusion or damage and to prevent any disturbance of the peace of the mission," *id.* art. 22, and to "prevent any attack on [a diplomatic agent's] person, freedom or dignity," *id.* art. 29. But the Convention leaves what "steps" are "appropriate" to the discretion of the host state. And that sort of discretion—"concern[ing] allocation of military and law enforcement resources"—is exactly the sort of public policy decision that is protected by the discretionary function exception. *See Industria Panificadora, S.A. v. United States,* 957 F.2d 886, 887 (D.C.Cir.1992) (per curiam).

The Consular Convention is no more helpful to appellants. It requires that the United States "shall ensure the proper conditions for the normal operation of a consulate and shall take all necessary measures to enable members of the consulate to carry out their duties and enjoy the rights, facilities, privileges and immunities" provided by the Consular Convention and U.S. law. Consular Convention art. 9. But it leaves to the United States complete discretion as to how to "ensure the proper conditions" and as to what "measures" are "appropriate." Nothing in the Consular Convention mandates a specific action not taken by the Secret Service.

Appellants argue that even if the specified conventions impose no mandatory duty on the government, 3 U.S.C. § 202 imposes on the Secret Service an obligation to provide foreign missions with heightened security, beyond simply ordinary police protection. Section 202 delegates foreign-mission protection to the Secret Service. It provides that the Uniformed Division of the Secret Service "shall perform such duties as the Director, United States Secret Service, may prescribe in connection with the protection of ... foreign diplomatic missions located in the metropolitan area of the District of Columbia." Still once again, appellants point to no mandatory actions required of the government and unperformed on the night in question. The method for achieving the specified standard of care is left to the Secret Service's discretion. *See Industria Panificadora,* 957 F.2d at 887.

■ If then appellants were relying only on international and statutory law, the dismissal would clearly be appropriate. Yet in response to the motion to dismiss below, appellants modified their claim to assert that the Service likely had internal objectives or policies that created the requisite mandatory obligation, but that appellants could not assert that that was so without discovery.

The district court rejected this modification of appellants' claim because of "the paucity of their factual averments." *See Mihaylov,* 70 F.Supp.2d at 9. The court thought that allowing them to proceed with their claim "would encourage subsequent litigation by hunch and engender the most unrestrained of fishing expeditions." *Id.* We disagree. In this case, appellants were caught between their ethical obligations under Rule 11 and the demands of the FTCA, and they responded appropriately.

Normally to survive a motion to dismiss in this area, a complaint must either allege facts demonstrating that the challenged actions are not grounded in public policy considerations or base its claims on government agents' mandatory obligations. Otherwise the court will presume that the challenged acts are discretionary public-

policy decisions and not amenable to suit. *See United States v. Gaubert,* 499 U.S. 315, 324–25, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). But if appellants alleged that such a mandatory policy actually existed—without knowing whether it did or not—they would risk violating Rule 11. *See* Fed. R.Civ.P. 11.

The Federal Rules of Civil Procedure require only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Appellants here complained of "[t]he failure of the Secret Service to provide adequate protection to the Bulgarian Embassy" on the night Ignatiev and Mihaylov were assaulted. This statement of the claim's facts is no doubt at the shorter and plainer end of the descriptive continuum, but descriptions of omissions often will be more summary than descriptions of actions. What is missing from the complaint is not a statement of the relevant facts—that the Secret Service failed to protect the Bulgarian Chancery—but a reference to applicable internal guidelines that rendered some protective actions nondiscretionary. Appellants have reason to believe that some such guidelines exist, since the Secret Service's only mandate to protect Washington's missions is to "perform such duties as the Director ... may prescribe." 3 U.S.C. § 202. Still without discovery, appellants have no way to know what mandatory policies may bind the Secret Service.[4]

We have previously required that plaintiffs be given an opportunity for discovery of facts necessary to establish jurisdiction prior to decision of a 12(b)(1) motion. *See, e.g., El–Fadl v. Cent. Bank of Jordan,* 75 F.3d 668, 676 (D.C.Cir.1996); *Crane v.*

*Carr,* 814 F.2d 758, 764 (D.C.Cir.1987). The issue here is even more narrow than in those cases, because the only discovery necessary to establish jurisdiction pertains not to the facts of the governmental action but to existence *vel non* of internal governmental policies guiding that action. Therefore, the district court's concerns about "fishing expeditions" and "litigation by hunch" are unfounded. In effect, appellants wished to discover not facts, but applicable rules. And because those rules are the supposed internal guidelines of the Secret Service, only discovery can reveal them.

Since internal guidelines can be an actionable source of a mandatory obligation under the FTCA, *see Gaubert,* 499 U.S. at 325, 111 S.Ct. 1267, an agency cannot shield itself from liability simply by denying the allegations of a complaint. It may be that there are no such Secret Service guidelines, or that a valid privilege prevents their disclosure, but neither has been established thus far. The district court erred in not allowing discovery, limited perhaps to the issue of whether such guidelines exist, prior to dismissing for lack of subject matter jurisdiction.

\* \* \*

The order of the district court dismissing for lack of subject matter jurisdiction is reversed.

*So ordered.*

---

4. The head of the Secret Service's Uniformed Division filed a declaration below asserting that the Division's mission-protection functions are generally discretionary. This declaration was not cited in the district court's decision and so was presumably not a factor in that decision. In any event, we do not think that such a declaration or affidavit is sufficient to justify dismissal under Rule 12(b)(1). *Cf. Herbert v. National Academy of Sciences,* 974 F.2d 192, 198 (D.C.Cir.1992).