**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 05-1053

---

RICHARD LEE SMITH; NANCY G. SMITH,
Individually and as Personal Representatives
of the Estate of Richard Hadaway Smith,
Deceased,

                                    Plaintiffs - Appellants,

        versus

WASHINGTON METROPOLITAN AREA TRANSIT
AUTHORITY,

                                    Defendant - Appellee.

---

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Alexander Williams, Jr., District Judge.
(CA-99-2187-AW)

---

Argued:  March 15, 2006                Decided:  June 2, 2006

---

Before MICHAEL, KING, and GREGORY, Circuit Judges.

---

Vacated and remanded by unpublished per curiam opinion.

---

**ARGUED:** Jack Arthur Gold, KARP, FROSH, LAPIDUS, WIGODSKY & NORWIND,
P.A., Rockville, Maryland, for Appellants.  Gerard J. Stief,
Associate General Counsel, WASHINGTON METROPOLITAN AREA TRANSIT
AUTHORITY, Washington, D.C., for Appellee.  **ON BRIEF:** Lawrence S.
Lapidus, KARP, FROSH, LAPIDUS, WIGODSKY & NORWIND, P.A., Rockville,
Maryland, for Appellants.  Carol B. O'Keeffe, Acting General
Counsel, Mark F. Sullivan, Deputy General Counsel, Jay R. Goldman,

Associate General Counsel, WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Richard L. and Nancy G. Smith (together, the "Plaintiffs") appeal from the summary judgment awarded to the Washington Metropolitan Area Transit Authority (the "Metro") in their civil action relating to the death of their son, Richard Hadaway Smith (the "decedent"), at the Metro's station in Bethesda, Maryland. Their sole contention on appeal is that the district court, in according immunity to the Metro, erroneously interpreted the mandate from our earlier decision in this case. See Smith v. Wash. Metro. Area Transit Auth. (Smith I), 290 F.3d 201 (4th Cir. 2002). As explained below, we agree with the Plaintiffs and thus vacate and remand.

I.

Public access to the Metro's Bethesda station is normally provided by three escalators and an elevator. On July 8, 1998, Maryland safety inspectors shut down one of the escalators ("Escalator Two") because it had failed a safety inspection. On the night of July 19, 1998, Metro mechanics, in conducting maintenance of the escalators, discovered a problem in another escalator ("Escalator Three") and left it disassembled pending repair. Because Escalators Two and Three were out of service, the Metro decided to utilize its sole remaining escalator ("Escalator One") as a "stationary walker" so that customers could use it to

3

both enter and exit the station.  On the following day, July 20, 1998, the decedent, after arriving at the Bethesda station by train, exited the station by climbing Escalator One.  Unbeknownst to the decedent, he suffered from severe coronary atherosclerosis, and upon reaching the surface, he had a fatal heart attack.

On July 22, 1999, the Plaintiffs filed suit against the Metro in the District of Maryland, alleging that the Metro's negligence rendered it liable for the decedent's death.  The Plaintiffs asserted five distinct claims:  (1) the Metro had negligently braked Escalator One for use as a stationary walker; (2) the Metro had negligently left Escalator Three disassembled pending repair; (3)  the Metro had negligently failed to warn customers of the Bethesda station's conditions; (4) the Metro's signage and illumination failed to comply with the requirements of the ANSI Code;[1] and (5) the Metro negligently failed to repair and maintain Escalators Two and Three.  The Metro moved for summary judgment, asserting, inter alia, that the Metro Compact under which it operated accorded it immunity against each of the Plaintiffs' claims.[2]  Specifically, the Metro claimed immunity under section 80

---

[1]Maryland law requires that all elevators and escalators comply with the ANSI Code, a safety code for elevators and escalators promulgated by The American National Standards Institute (ANSI).  See  Md. Code Ann., Pub. Safety § 12-805.

[2]The Metro Compact was executed in 1966 by Virginia, Maryland, and the District of Columbia.  Congress consented to the Compact, and any legal issues concerning the Compact's interpretation are federal questions.  See Cuyler v. Adams, 449 U.S. 433, 438 (1981).

4

of the Compact, which grants the Metro immunity for "torts occurring in the performance of a governmental function." The district court awarded summary judgment to the Metro on the Plaintiffs' signage-and-illumination claim, but denied summary judgment on the remaining four claims, ruling that the Metro was not entitled to immunity thereon. See Smith v. Wash. Metro. Area Transit Auth., 133 F. Supp. 2d 395, 405-07 (D. Md. 2001). The Metro subsequently appealed from the court's order to the extent that it denied the Metro immunity. Our decision in Smith I followed.

In Smith I, we concluded that the Metro Compact's preservation of immunity for "torts occurring in the performance of a governmental function" was essentially coextensive with the immunity accorded to the federal government under the "discretionary functions" exception in the Federal Tort Claims Act ("FTCA"). See 290 F.3d at 206-07. We therefore analyzed the Metro's claim for immunity in accordance with the legal principles of the FTCA. We ultimately concluded that the Metro was immune from liability on the Plaintiffs' first four claims, in part because there was no mandatory rule, policy, or procedure that required the Metro to act (or refrain from acting) in the manner that the Plaintiffs, in their first four claims, asserted that the Metro should have acted (or refrained from acting). See id. at 208-11. We specifically withheld judgment, however, on whether the

5

Metro was immune from liability on the Plaintiffs' fifth claim —
that the Metro had negligently failed to properly maintain and
repair Escalators Two and Three (the "negligent maintenance
claim"). By way of example, we observed that, to the extent that
the Metro's "repair and maintenance of Escalators Two and Three
contravened applicable requirements of the ANSI Code," such repair
and maintenance would fall outside the scope of the Metro's
immunity. Id. at 211. Accordingly, we remanded the case to the
district court with the following instructions:

> On remand, the district court should first accord the
> METRO the immunity to which it is entitled. Then, if
> necessary, it can decide whether Smith can make a prima
> facie showing of negligent repair and maintenance, and it
> can also assess whether there is a sufficient proximate
> cause nexus between such a showing and Smith's death. The
> district court should then determine whether anything is
> left of this case.

Id.

On remand, the Plaintiffs' escalator expert, John G. Gerk,
submitted a report describing and analyzing the Metro's practices
in maintaining and repairing Escalators One and Three during the
years preceding the decedent's death. According to Gerk's report,
the Metro had adopted maintenance schedules for its escalators that
required the Metro to perform specific maintenance tasks on either
an annual, quarterly, monthly, or biweekly basis. Gerk reported
that the Metro had not performed the required annual tasks in 1996,
and in previous years had not performed those tasks adequately.
Moreover, the quarterly tasks had only been performed three times

6

in the preceding ten quarters and, in the preceding fourteen months, the monthly tasks had been performed only three times on Escalator Three and only once on Escalator Two. Finally, in the six months preceding the decedent's death, the Metro had performed none of the mandated biweekly maintenance on the escalators. On the basis of these findings, Gerk concluded that, had the Metro followed its own maintenance schedules, Escalators Two and Three would have been functioning properly on July 20, 1998, and that therefore Escalator One would not have been in use as a stationary walker on that day. Gerk's report, however, failed to link the problems with Escalators Two and Three to violations of the ANSI Code.

On May 14, 2004, the Metro renewed its motion for summary judgment, asserting that it was immune from liability on the Plaintiffs' negligent maintenance claim, and alternatively that the Plaintiffs had failed to demonstrate that the Metro's failure to properly maintain and repair Escalators Two and Three was the proximate cause of Smith's death. By its opinion of December 16, 2004, the district court granted the Metro's motion for summary judgment, ruling that the Metro was entitled to immunity on the negligent maintenance claim. See Smith v. Wash. Metro. Area Transit Auth., CA-99-2187-AW, slip op. at 12 (D. Md. Dec. 16, 2004). In so doing, the court interpreted Smith I to preclude consideration of anything except whether the Smiths had established

7

a claim of negligent maintenance based solely on violations of the ANSI Code. In other words, the court read Smith I to conclude that only violations of the ANSI Code fell outside the scope of the immunity accorded to the Metro for "governmental functions" under the Metro Compact. Because Gerk's report only correlated the escalator problems to the Metro's failure to follow its internal maintenance schedules, and not to violations of the ANSI Code, the court concluded that the Metro was immune from liability on the negligent maintenance claim and awarded the Metro summary judgment on that basis. Because it determined Metro was entitled to immunity, the court did not reach the issue of whether the Metro's failure to properly repair and maintain Escalators Two and Three proximately caused the decedent's death.

The Plaintiffs timely appealed, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We "review de novo an award of summary judgment, viewing the facts and inferences drawn therefrom in the light most favorable to the non-moving party." EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405 (4th Cir. 2005). We also review de novo a district court's interpretation of an appellate court's mandate, S. Atlantic Ltd. P'ship of Tenn. v. Riese, 356 F.3d 576, 583 (4th Cir. 2004),

8

and questions of immunity, <u>Franks v. Ross</u>, 313 F.3d 184, 192 (4th Cir. 2002).

### III.

The Plaintiffs assert on appeal that the district court erroneously interpreted the <u>Smith I</u> mandate to only permit liability on the basis of ANSI Code violations. They further contend that the Metro's internal maintenance schedules set forth mandatory standards that the Metro enjoys no discretion to disobey, and that therefore the Metro's failure to adhere to those schedules does not fall within the scope of the Metro's immunity. We assess these contentions in turn.

As discussed above, we concluded in <u>Smith I</u> that the immunity bestowed on "governmental functions" by the Metro Compact is coextensive with that accorded "discretionary functions" by the FTCA in 28 U.S.C. § 2680(a). <u>Smith I</u>, 290 F.3d at 206-07.[3] The Supreme Court has set forth a two-tiered analysis for determining

---

[3]Section 2680(a) accords immunity to the federal government against

> [a]ny claim based upon an act or omission of an employee
> of the Government, exercising due care, in the execution
> of a statute or regulation, whether or not such statute
> or regulation be valid, or based upon the exercise or
> performance or the failure to exercise or perform a
> discretionary function or duty on the part of a federal
> agency or an employee of the Government, whether or not
> the discretion involved be abused.

9

whether official conduct is discretionary for purposes of §
2680(a). First, "a court must consider whether the action is a
matter of choice for the acting employee. . . . [C]onduct cannot be
discretionary unless it involves an element of judgment or choice."
Berkovitz v. United States, 486 U.S. 531, 536 (1998). Thus, "when
a federal statute, regulation, or policy specifically prescribes a
course of action for an employee to follow," the discretionary
function exception does not apply. Id. We have emphasized that
the inquiry focuses not so much on the source of the restriction as
on whether the restriction imposes mandatory duties. See Perkins
v. United States, 55 F.3d 910, 914 (4th Cir. 1995) ("[F]ailure to
perform a mandatory function is not a discretionary function.").
Accordingly, where an agency official contravenes internal agency
guidelines that impose mandatory duties, the discretionary
functions exception poses no bar to the government's liability.
See Blakely v. U.S.S. Iowa, 991 F.2d 148, 152-53 (4th Cir. 1993)
(examining internal JAG guidelines to determine whether conduct
involved discretion); see also Ignatiev v. United States, 238 F.3d
464, 467 (D.C. Cir. 2001) ("[I]nternal guidelines can be an
actionable source of a mandatory obligation under the FTCA.").

Second, "even if the challenged conduct involves an element of
judgment, a court must determine whether that judgment is of the
kind that the discretionary function exception was designed to
shield, that is, decisions grounded in social, economic, and

political policy." Smith I, 290 F.3d at 208 (internal quotation marks omitted). Only those decisions "based on considerations of public policy" are protected. United States v. Gaubert, 499 U.S. 315, 323 (1991) (internal quotation marks omitted).

In applying these principles to the Plaintiffs' five claims in Smith I, we determined that, with respect to the first four claims, the Metro was under no mandatory obligation to act (or refrain from acting) as the Plaintiffs asserted it should have acted (or refrained from acting). See 290 F.3d at 208-11. Moreover, we concluded that the Metro's decisions, upon which the Plaintiffs' first four claims centered, were based on public policy considerations. See id. Thus, we ruled that the Metro was entitled to immunity on each of the Plaintiffs' first four claims. See id.

With respect to the Plaintiffs' negligent maintenance claim, however, we remanded for a determination, in light of our Smith I opinion, of whether the Metro was entitled to immunity. Id. at 211. By way of example, we observed that, to the extent that the Metro's "repair and maintenance of Escalators Two and Three contravened applicable requirements of the ANSI Code," such repair and maintenance would fall outside the scope of the Metro's immunity, because it "would not involve 'an element of judgment or choice.'" Id. (quoting Berkovitz, 486 U.S. at 536). On remand, the district court interpreted this language to mean that the Metro

11

was entitled to immunity <u>unless</u> its repair and maintenance violated the ANSI Code. In so doing, the district court mistook an illustrative application of the pertinent legal principle for the legal principle itself. As we explained in <u>Smith I</u>, the Metro Compact's grant of immunity does not extend to <u>any</u> nondiscretionary conduct. <u>See</u> 290 F.3d at 207-08. Thus, if the Metro's repair and maintenance of Escalators Two and Three was governed by <u>any</u> mandatory source of obligation — including, but not limited to, the ANSI Code — it is not entitled to immunity on the negligent maintenance claim.

According to the Plaintiffs, the Metro's maintenance schedules, upon which Gerk relied in preparing his report, constitute just such a mandatory source of obligation. The district court, however, having erroneously determined that the Metro's potential liability was limited to conduct in violation of the ANSI Code, failed to consider whether the maintenance schedules impose mandatory obligations on the Metro.

The Metro contends that, despite any error in interpreting <u>Smith I</u>, the court's judgment can be affirmed on other grounds. It first contends that, although relied upon and referenced in Gerk's report, the maintenance schedules were not included in the summary judgment record and thus were not properly before the district court. It also suggests that the maintenance schedules do not impose mandatory obligations. Finally, the Metro asserts that,

12

even if it is not entitled to immunity on the negligent maintenance claim, the Plaintiffs have failed to establish a prima facie case that its failure to properly repair and maintain Escalators Two and Three proximately caused Smith's death.  Because the district court addressed only the threshold issue of the Metro's immunity, however, it has not considered these assertions, and we think it appropriate that the district court be accorded the opportunity to pass on them in the first instance.[4]

IV.

Pursuant to the foregoing, we vacate the judgment of the district court and remand for such further proceedings as may be appropriate.

VACATED AND REMANDED

---

[4]The parties have filed, pursuant to our post-argument order of March 24, 2006, a supplemental joint appendix containing samples of the maintenance schedules on which Gerk relied in preparing his report.  In light of our disposition of this appeal, however, we have not considered the effect, if any, of those maintenance schedules on the Plaintiffs' suit against the Metro.  We leave such consideration for the district court.